[No. S012846. Nov. 1, 1990.]

SOUTHWEST CONCRETE PRODUCTS, Plaintiff, Cross-defendant and Appellant, v.
GOSH CONSTRUCTION CORPORATION et al., Defendants, Cross-complainants and Appellants;
ARMCO, INC., Cross-defendant and Appellant.

**COUNSEL**

Feldsott & Lee and Martin L. Lee for Cross-defendant and Appellant.

Robert L. Kern for Plaintiff, Cross-defendant and Appellant.

Joseph M. Loomis as Amicus Curiae on behalf of Plaintiff, Cross-defendant and Appellant.

Jones, Mahoney & Brayton, Paul M. Mahoney and Richard A. Soll for Defendants, Cross-complainants and Appellants.

## OPINION

**PANELLI, J.**—We granted review in this matter to resolve a conflict among the Courts of Appeal on the issue of whether a provision in a commercial sales contract which calls for interest of 18 percent per year on late payments violates the usury law. Although the petition for review had raised other issues as well, our order limited review to the usury question.

We conclude that interest payments on overdue commercial accounts are not subject to the usury law and disapprove *Crestwood Lumber Co.* v. *Citizens Sav. & Loan Assn.* (1978) 83 Cal.App.3d 819 [148 Cal.Rptr. 129] and *Mark McDowell Corp.* v. *LSM 128* (1989) 214 Cal.App.3d 1427 [263 Cal.Rptr. 310], which held to the contrary.

In the present case, Gosh Construction Corporation and Lawrence Gosh (collectively, Gosh) formed a joint venture to install sewer pipe in the City of Palm Springs. Gosh purchased the pipe from Southwest Concrete Products; the pipe was manufactured by Armco, Inc. A dispute arose about the quality of the pipe, and Gosh failed to pay for it. Southwest brought suit to recover the unpaid balance. Gosh cross-complained against Southwest and Armco for breach of contract and negligence, alleging that the pipe was defective. Armco was granted a nonsuit before the case went to the jury. The jury found in favor of Southwest and against Gosh on the complaint and the cross-complaint.

The jury found, on the basis of a special verdict, that the delivery tickets and invoices that accompanied the pipe constituted a contract with Southwest, that Gosh breached the contract, and that the contract contained an attorney fees clause and a provision for interest of 1½ percent per month (18 percent per year) on late payments. The trial court awarded Southwest prejudgment interest at the rate of 18 percent per year based on the contract. It also awarded Southwest attorney fees of $13,077 under Civil Code section 1717. Armco's motion for attorney fees was denied on the ground it was not a party to the contract. Gosh moved for a new trial and for judgment notwithstanding the verdict on the ground that the prejudgment interest of 18 percent was usurious. The trial court denied the motion.

All parties appealed. The Court of Appeal, in the published portion of its opinion, affirmed the award of prejudgment interest at the rate of 18

percent, holding that the late charge was not subject to the usury law. In the unpublished portion of its opinion, the Court of Appeal reversed and remanded on other issues.

■ The law of usury in California is based upon California Constitution article XV, section 1, which limits the interest payable "[f]or any loan or forbearance of any money."[1] A loan of money is the delivery of a sum of money to another under a contract to return at some future time an equivalent amount. A forbearance of money is the giving of further time for the payment of a debt or an agreement not to enforce a claim at its due date. (*Boerner* v. *Colwell Co.* (1978) 21 Cal.3d 37, 44, fn. 7 [145 Cal.Rptr. 380, 577 P.2d 200].) However, "[b]oth a loan of money and a forbearance are to be distinguished from a sale which is the 'transfer of property in a thing for a price in money.'" (*O'Connor* v. *Televideo System, Inc.* (1990) 218 Cal.App.3d 709, 713 [267 Cal.Rptr. 237].) ■ In determining whether a transaction constitutes a loan or forbearance, we look to the substance rather than the form of the transaction. "In all such cases the issue is whether or not the bargain of the parties, assessed in light of all the circumstances and with a view to substance rather than form, has as its true object the hire of money at an excessive rate of interest." (*Boerner* v. *Colwell Co., supra*, 21 Cal.3d at p. 44.)

There are many exceptions to the usury law. (See Rabin & Brownlie, *Usury Law in California: A Guide Through the Maze* (1987) 20 U.C. Davis L.Rev. 397.) Two of the exceptions are applicable here. ■ One is the "time-price" doctrine. This doctrine applies when property is sold on credit as an advance over the cash price. In these circumstances, the seller finances the purchase of property by extending payments over time and charging a higher price for carrying the financing. This type of transaction, often called a bona fide credit sale, is not subject to the usury law because it does not involve a loan or forbearance. (*Boerner* v. *Colwell Co., supra*, 21 Cal.3d at p. 45; *Verbeck* v. *Clymer* (1927) 202 Cal. 557, 563 [261 P. 1017]; *O'Connor* v. *Televideo System, Inc., supra*, 218 Cal.App.3d at p. 714.) As explained in *Verbeck*: "'On principle and authority, the owner of property, whether real or personal, has a perfect right to name the price on which he is willing to sell, and to refuse to accede to any other. He may offer to sell at a designated price for cash or at a much higher price on credit, and a credit sale will not constitute usury however great the difference between the two prices,

---

[1] Subdivision (2) of that provision sets the maximum rate at the higher of 10 percent or 5 percent per year plus the Federal Reserve Bank of San Francisco rate in effect on specified dates. (Cal. Const., art. XV, § 1, subd. (2).)

It is undisputed that the maximum permissible rate is less than 18 percent per year.

unless the buying and selling was a mere pretense. . . .'" (*Verbeck* v. *Clymer, supra*, 202 Cal. at p. 563.)

■ Another exception to the usury laws is the rule that a debtor by voluntary act cannot render an otherwise valid transaction usurious. "[A] debtor cannot bring his creditor to the penalties of the Usury Law by his voluntary default in respect to the obligation involved where no violation of law is present at the inception of the contract." (*Sharp* v. *Mortgage Security Corp.* (1932) 215 Cal. 287, 291 [9 P.2d 819].) Where the excessive interest is caused by a contingency under the debtor's control, the transaction will not be deemed usurious. (*Ibid.*; *Penziner* v. *West American Finance Co.* (1933) 133 Cal.App. 578, 590 [24 P.2d 501]; *Abbott* v. *Stevens* (1955) 133 Cal.App.2d 242, 247 [284 P.2d 159].)

Gosh correctly contends that their position—that the late charge is usurious—is supported by *Crestwood Lumber Co.* v. *Citizens Sav. & Loan Assn., supra*, 83 Cal.App.3d 819. In *Crestwood,* a lumber company sold lumber for real property improvements. The sales orders and invoices stated that payment was due within 10 days from date of invoice and that a finance charge of 1½ percent per month (18 percent per year) would be charged on all overdue accounts. The buyer failed to pay, and the lumber company brought suit. The trial court found the interest rate usurious and void. The Court of Appeal affirmed, holding that the finance charge was interest upon a forbearance of money and was therefore subject to the usury laws.

*Crestwood, supra*, 83 Cal.App.3d 819, was followed recently in *Mark McDowell Corp.* v. *LSM 128, supra*, 214 Cal.App.3d 1427.[2] In *Mark McDowell,* the plaintiff, a subcontractor, contracted with the defendant to do rough grading work on a construction project. Under the terms of the agreement, the plaintiff was to bill the defendant for work performed, and the defendant was to pay each bill within a specified number of days. The contract provided that sums not paid when due would thereafter bear interest at the rate of 1½ percent per month. The defendant failed to pay, and the plaintiff sued for the unpaid balance and interest. The trial court found the interest rate usurious and awarded only 10 percent interest. The Court of Appeal affirmed, relying on *Crestwood.*

The Court of Appeal in the present case refused to follow *Crestwood, supra*, 83 Cal.App.3d 819. It noted that *Crestwood* had been criticized by legal commentators (Hogan, *Is There a Cap on Service Charges?* (1987) 7

---

[2] Even more recently, however, the Sixth Appellate District Court of Appeal criticized and refused to follow *Crestwood* and *Mark McDowell* in *O'Connor* v. *Televideo System, Inc., supra*, 218 Cal.App.3d 709.

Cal.Law. No. 1, p. 30; Loomis, *Crestwood Lumber Company v. Citizens Savings & Loan Association: The Usury Law and Liquidated Damages in Sale of Goods Transactions* (1980) 10 Golden Gate L.Rev. 553) and that its reasoning had been undercut by *Fox v. Federated Department Stores, Inc.* (1979) 94 Cal.App.3d 867 [156 Cal.Rptr. 893].[3] The court found no valid distinction between the present transaction and the service charges on retail department store and oil company charge accounts which were held in *Fox* not to violate the usury laws.

In *Fox,* retail department stores and oil companies imposed monthly charges of 1 to 1½ percent on unpaid account balances. The plaintiffs, who were purchasers of goods and services, argued that such charges constituted usury and that the Unruh Act, which allowed finance charges in excess of the limit imposed by California Constitution article XV, was unconstitutional.[4] The court in *Fox* held that a "time-price" or a "finance charge" in a bona fide sale of goods or services is not a form of interest within the meaning of article XV of the California Constitution's proscription against usury. It further held that the sales by the defendants of their goods and services are bona fide sales to which the time-price doctrine applies. (*Fox v. Federated Department Stores, Inc., supra,* 94 Cal.App.3d at p. 872.) It also upheld the constitutionality of the Unruh Act, which allows finance charges in excess of usury limits, on the ground that the transactions it regulates are within the time-price doctrine and thus not subject to the usury laws. (*Id.* at p. 880.)

In the present case, the Court of Appeal found the reasoning of *Fox* directly applicable to the transaction at issue here. It is exempt from the usury laws because it was a bona fide credit sale. This is true regardless of whether the Unruh Act applies to the transaction. The court in *Fox* recognized this when it responded to the argument that the Unruh Act did not apply to the oil company defendants because they sold through independent dealers and thus were not retailers: "The sales through their independent dealers are not exempt because the Unruh Act exempts them, but because the transactions are good faith credit sales of their products. This good faith sale of products was recognized as not subject to the usury limitation before the enactment of the Unruh Act." (*Fox v. Federated Department Stores, Inc., supra,* 94 Cal.App.3d at p. 873.)

---

[3] The Court of Appeal did not discuss *Mark McDowell Corp. v. LSM 128, supra,* 214 Cal.App.3d 1427, because that case was filed a few weeks after the opinion in this case.

[4] The Unruh Act (Civ. Code, §§ 1801-1812.20) was adopted in 1959 to regulate retail installment sales. It regulates, among other things, the finance charges that may be collected for bona fide credit sales of consumer goods or services. It applies, however, only to retail transactions.

Another reason given by the Court of Appeal for not following *Crestwood* (*supra,* 83 Cal.App.3d 819) was that *Crestwood* failed to consider the California Uniform Commercial Code when it concluded that the late charge did not qualify as a liquidated damage provision because the parties had not agreed to it. The court here noted that under section 2207 of the California Uniform Commercial Code, the clause providing for late charges on overdue invoices became part of the contract. Section 2207 provides that additional terms become part of a contract between merchants unless the person receiving them objects to them. The official code comment to this section lists as an example of such additional terms "a clause providing for interest on overdue invoices. . . ." (23A West's Ann. Cal. U. Com. Code (1964 ed.) § 2207, com. 5, p. 175 [Deering's Ann. Cal. U. Com. Code (1986 ed.) § 2207, p. 75].)

We agree with the Court of Appeal that *Crestwood, supra*, 83 Cal.App.3d 819, should not be followed. This was not a cash sale, as the *Crestwood* court believed. ■ A cash sale is one where the buyer and seller exchange the goods and payment at the same time; any other method of payment is "on credit." ■ The transaction in this case was a credit sale. Payment was to be made within a certain number of days after delivery of the pipe; if payment was not made by that date, then finance charges would accrue. There was no forbearance here. As previously noted, a forbearance is the giving of further time for payment of a debt or an agreement not to insist upon payment at the due date. (*Boerner* v. *Colwell Co., supra*, 21 Cal.3d at p. 44, fn. 7.) "If the invoice[s] truly constituted an agreement to give further time for payment in exchange for an 18 percent surcharge on the principal, then the buyer could conceivably forbear ad infinitum, so long as the finance charge was paid, and the creditor could never recover the principal. The creditor would never be able to sue to collect the money past due because it was receiving consideration for its agreement to forbear on the account." (*O'Connor* v. *Televideo System, Inc., supra*, 218 Cal.App.3d at p. 717.)

Both *Crestwood* (*supra,* 83 Cal.App.3d 819) and *Mark McDowell* (*supra,* 214 Cal.App.3d 1427) also failed to apply, or even discuss, the rule that a transaction that was not usurious at its inception cannot become usurious by virtue of the debtor's voluntary default. As the court in *O'Connor* v. *Televideo System, Inc., supra*, 218 Cal.App.3d at pages 716-717, stated: "This precept has been expressed in a number of California cases. (*Sharp* v. *Mortgage Security Corp., supra*, 215 Cal. at p. 291; *Penziner* v. *West American Finance Co., supra*, 133 Cal.App. at p. 590; see also *French* v. *Mortgage Guarantee Co.* [(1940)] 16 Cal.2d [26,] 33 [104 P.2d 655, 130 A.L.R. 67]; *Abbot* v. *Stevens, supra*, 133 Cal.App.2d at p. 247; *First American Title Ins.*

& *Trust Co.* v. *Cook* [(1970)] 12 Cal.App.3d [592,] 596 [90 Cal.Rptr. 645]; *Fox* v. *Federated Department Stores, supra,* 94 Cal.App.3d at p. 884.) It has also been recognized by numerous other authorities. (See, e.g., 1 Witkin, Summary of Cal. Law (9th ed. 1987) Contracts, § 487, p. 434; 47 C.J.S., Interest & Usury § 140, p. 257; *Scientific Products* v. *Cyto Medical Laboratory, Inc.* (D.Conn. 1978) 457 F.Supp. 1373, 1379; *Rangen, Inc.* v. *Valley Trout Farms, Inc.* (1983) 104 Idaho 284 [658 P.2d 955, 960]; *Union Bank* v. *Kruger* (1969) 1 Wn.App. 622 [463 P.2d 955, 960].)" That principle applies here as well.

We further agree with the Court of Appeal's analysis of the California Uniform Commercial Code. The late charges became part of the contract under section 2207 of the California Uniform Commercial Code. Indeed, the jury expressly found that the delivery tickets and invoices that accompanied the pipe constituted a contract which included the provision for 1½ percent interest per month on late payments.

To summarize, we conclude that the late charge provided in the contract is not subject to the usury law because it does not constitute payment for the "loan or forbearance of any money." (Cal. Const., art. XV, § 1.) It is exempt from the usury law under the time-price doctrine and the principle that a debtor by voluntary act cannot render an otherwise valid contract usurious. In light of our limitation of review to the issue of usury, we do not reach the question urged by amicus curiae regarding the validity of the late charge as a liquidated damage provision.

The judgment of the Court of Appeal is affirmed.

Lucas, C. J., Eagleson, J., Kennard, J., and Arabian, J., concurred.

**MOSK, J.,** Concurring and Dissenting.—The majority aptly state their holdings as follows: "To summarize, we conclude that the late charge provided in the contract is not subject to the usury law because it does not constitute payment for the 'loan or forbearance of any money.' (Cal. Const., art. XV, § 1.) It is exempt from the usury law under [1] the time-price doctrine and [2] the principle that a debtor by voluntary act cannot render an otherwise valid contract usurious." (Maj. opn., *ante,* this page.) In my view, the holding stated in the first of the quoted sentences is correct and fully disposes of the usury claim in this case; the two holdings stated in the second sentence, however, are incorrect and unnecessary to the decision.

I

As the majority correctly observe, the usury law set forth in our Constitution applies only to a "loan or forbearance." (Cal. Const., art. XV, § 1.)[1] If the transaction is neither a "loan" nor a "forbearance," it is not subject to the usury law no matter what its terms. And in determining whether the transaction is a loan or a forbearance, courts look to substance rather than form. (*Boerner* v. *Colwell Co.* (1978) 21 Cal.3d 37, 44 [145 Cal.Rptr. 380, 577 P.2d 200]; *Glaire* v. *La Lanne-Paris Health Spa, Inc.* (1974) 12 Cal.3d 915, 927 [117 Cal.Rptr. 541, 528 P.2d 357].)

No one claims the contractual provision at issue in the case at bar is a loan; rather, the corporate and individual defendants (collectively Gosh) contend the provision is a forbearance. It is not. Neither the Constitution nor the statute defines "forbearance," but the term has a settled meaning: as the majority again correctly observe, "A forbearance of money is the giving of further time for the payment of a debt or an agreement not to enforce a claim at its due date." (Maj. opn., *ante,* p. 705.) These acts, of course, are complementary—two sides of the same coin: there is forbearance when, *at the time a debt matures,* the creditor (1) agrees to refrain ("forbear") from enforcing the debt immediately, and instead (2) agrees to give the debtor additional time to pay. Whatever the motives of the parties, the essence of the transaction is thus the voluntary *agreement* of the creditor to a new maturity date for the debt.[2]

It is not difficult to apply this definition to the undisputed facts before us. Each delivery ticket and invoice for the goods sold bore the notation that "It is understood and agreed to pay carrying charges of 1½% per month (18% per annum) on any balance unpaid after the 10th of the following month of the date of purchase." But it was Gosh, the purchaser, that "understood and agreed" to pay such charges. The seller, Southwest Concrete Products (Southwest), did not agree to anything; in particular, it did not agree, on each maturity date, that it would refrain from enforcing the debt and that Gosh could have extra time to pay. On the contrary, South-

---

[1] Our statutory usury law, an initiative measure that has not been codified (Stats. 1919, p. lxxxiii (10 West's Ann. Civ. Code (1985 ed.) foll. § 1916.12 at p. 148 [Deering's Ann. Uncod. Measures 1919-1 (1973 ed.) p. 35]), likewise applies only to a "loan or forbearance." Although not mentioned by the majority, this statute remains in full force and effect to the extent that it does not conflict with the Constitution, e.g., in its provisions for civil and criminal penalties. (*Penziner* v. *West American Finance Co.* (1937) 10 Cal.2d 160, 170-178 [74 P.2d 252].)

[2] Indeed, this is presumably why the drafters included the term "forbearance" in the usury law: a forbearance is sufficiently like the act of making a new loan that to omit it would allow evasion of the interest limitations on the prime target of the usury law, i.e., loans as such.

west filed this action for the very purpose of collecting the amounts due on the dates specified in the delivery tickets and invoices, together with the late charges. Thus Southwest not only did not expressly agree to forbear, but an implied agreement to that effect is foreclosed both by the terms of the contract and by Southwest's conduct in filing this action. The provision for late charges was therefore not a forbearance.

As the majority correctly note, this conclusion is underscored by contemplating its opposite: as pointed out in *O'Connor* v. *Televideo System, Inc.* (1990) 218 Cal.App.3d 709, 717 [267 Cal.Rptr. 237], "If the invoice[s] truly constituted an agreement to give further time for payment in exchange for an 18 percent surcharge on the principal, then the buyer could conceivably forbear ad infinitum, so long as the finance charge was paid, and the creditor could never recover the principal. The creditor would never be able to sue to collect the money past due because it was receiving consideration for its agreement to forbear on the account." The reason why such a result would be intolerable is also obvious: in the real world a seller of goods often operates on a narrow profit margin; unless he is paid for his product within a reasonable time, he will be unable to meet his own costs and his business will be in jeopardy. He cannot, in short, live by late charges alone.

It follows that the contractual provision here in issue was neither a loan nor a forbearance. As the majority correctly hold, it was therefore "not subject to the usury law." (Maj. opn., *ante,* p. 704.)

## II

The majority nevertheless go further, and hold that two "exceptions" to the usury law are applicable in this case—the time-price doctrine and the rule that a debtor cannot make a valid contract usurious by his voluntary act. (Maj. opn., *ante,* pp. 705-709.) Neither of the latter holdings is necessary to our decision, because the majority's principal holding that the contractual provision was not a forbearance fully disposes of the claim that it violated the usury law. Worse, each of these secondary holdings is incorrect.

The majority first declare that the contractual provision is exempt from the usury law under the time-price doctrine. (Maj. opn., *ante,* p. 705.) For several reasons, that doctrine has nothing to do with the case at bar. Although their opinion is unclear and conclusory on this point, the majority appear to reason as follows: (1) the time-price doctrine "applies when property is sold on credit" (maj. opn., *ante,* p. 705); (2) "The transaction in this case was a credit sale" (*id.* at p. 708); and therefore (3) the time-price

doctrine applies to the transaction in this case. The conclusion does not follow, however, because the term "credit sale" has a different meaning in each of the majority's two premises.

In the first premise "credit sale" means, as the majority correctly state, a sale in which "the seller finances the purchase of property by extending payments over time and charging a higher price for carrying the financing." (Maj. opn., *ante*, p. 705.) This is the typical retail installment sale contract.[3] It is true, as the majority point out, that if such a transaction is bona fide it "is not subject to the usury law because it does not involve a loan or forbearance." (*Ibid.*) But that fact is irrelevant, because the case at bar does not involve such a contract.

In a retail installment sale contract the seller agrees to let the buyer pay for the goods in a number of partial payments spread over a predetermined period of time, rather than immediately in a lump sum, and charges a higher price to compensate for his loss of the present use of the buyer's money, the risk of default, the effect of inflation, etc. The transaction is thus distinguished by certain attributes. First, the seller in effect offers the goods at two prices—one price if the buyer pays cash and a higher price if he purchases on credit. Second, if the buyer opts to purchase on credit, the parties agree to all the terms of the sale—including the ultimate price—at the outset, before either begins to perform. Third, each payment is, in its entirety, a portion of the agreed price, even though part of the payment may be characterized as "interest" (or "service charge" or "finance charge," etc.). Fourth, as long as the buyer makes each payment in the agreed amount and on time, he is not in default. The time-price doctrine applies to such a transaction, and provides that the difference between the cash price and the credit or "time" price—called "the time-price differential"—is not interest and hence is not subject to the usury law.

None of these four attributes, however, is shared by the kind of "credit sale" referred to in the majority's second premise and actually at issue in this case. In such a transaction the seller requires that the buyer pay him the full price of the goods in a lump sum within a specified time—usually a

---

[3] Common examples are a contract for the sale of real property in which the vendor retains legal title and the purchaser makes a downpayment followed by agreed periodic payments of principal and interest (*Verbeck* v. *Clymer* (1927) 202 Cal. 557, 562-563 [261 P. 1017]), and a contract for the retail sale of a "big ticket" item of personal property (e.g., an automobile or a major household appliance) on similar terms. A special category of the latter type of contract is the "revolving" retail charge account, in which the buyer has the option of making continuing credit purchases upon payment each month of a minimum installment and a finance charge, both calculated on the unpaid balance. (*Fox* v. *Federated Department Stores, Inc.* (1979) 94 Cal.App.3d 867, 875-882 [156 Cal.Rptr. 893].)

matter of days—after delivery; to encourage timely payment, the contract also imposes a late charge in the event of default. Although such a transaction is in theory a species of installment sale, it may more accurately be denominated a "single-payment credit sale," and is used primarily by manufacturers and wholesalers such as Southwest.

A single-payment credit sale differs from the typical retail installment sale contract in each of the four ways discussed above. First, Southwest did not offer to sell its goods to Gosh at one price for cash and another on credit, and hence there was no time-price differential. There was only one price offered and accepted. Second, Southwest did not agree at the inception of the sale that the late charge of 1½ percent per month would be part of the credit price of the goods; instead, as the Court of Appeal correctly observed in its opinion below, "Southwest did not intend to extend credit but rather imposed the finance charge to encourage payment within the specified time, and to compensate it for the delay in payment." Third, for this reason the late charge did not become part of the sale price even after it was incurred. And fourth, even if it had paid the late charge, Gosh would have been in default because it failed to pay the sale price on the specified date: under this contract, Gosh did not have the option of avoiding default simply by adding 1½ percent to the price.

For present purposes, accordingly, a wholesaler's single-payment credit contract is a very different instrument from a retailer's installment sale contract. Because of those differences, the majority err in holding that the late charge here in issue is exempt from the usury law under the time-price doctrine, which applies only to the latter type of contract.

### III

The majority also hold the present contractual provision exempt from the usury law under "the rule that a transaction that was not usurious at its inception cannot become usurious by virtue of the *debtor's* voluntary default." (Maj. opn., *ante*, p. 708, italics added.) The emphasized word underscores the real purpose of this "rule," and in so doing shows its irrelevance to the case at bar.[4]

The purpose of the debtor's act rule is to prevent injustice in the following circumstances: (1) a lender (creditor) makes a loan that bears a stated interest rate at a legal level; (2) the terms of the loan include a contingency

---

[4] As will appear, the "rule" is more a statement of policy than a substantive principle. For purposes of convenience, however, I shall refer to it hereafter as the debtor's act rule.

which, if it occurs, will result in an effective interest rate above the legal level; and (3) the contingency is within the control of the borrower (debtor). The courts recognize that it would be inequitable to allow the borrower *by his own conduct* to deprive the lender of the benefit of his loan or subject him to the civil and criminal penalties of the usury law. To prevent this result the courts have long enforced the rule that "The agreement must, in its inception, be usurious, for it cannot become so by reason of the borrower's default. (*Sharp* v. *Mortgage Security Corp.* [(1932)] 215 Cal. 287 [9 Pac.(2d) 819].) Where the excessive interest is caused by a contingency under the lender's control, or not under the borrower's control, the transaction is usurious; [it is] *otherwise when the contingency is under the borrower's control."* (*Penziner* v. *West American Finance Co.* (1933) 133 Cal.App. 578, 590 [24 P.2d 501], italics added.) Some examples will illustrate the proper application of this rule.

Perhaps the most common contingency within the borrower's control is his voluntary default. A loan agreement may provide the maximum legal rate of interest plus additional charges if the borrower defaults. Even if these charges are measured by or characterized as "interest," they do not make the transaction usurious: "Usury law applies only to unmatured contracts with a fixed obligation. If the borrower can avoid the liability of a default payment by the performance of the contract, this extra cost is not regarded as interest, but rather a means of enforcing punctual payment. The contingency of these charges is technically within the borrower's control." (Note, *A Comprehensive View of California Usury Law* (1974) 6 Sw. U. L.Rev. 166, 212 (hereafter *California Usury Law*).)

For example, in *First American Title Ins. & Trust Co.* v. *Cook* (1970) 12 Cal.App.3d 592, 596-597 [90 Cal.Rptr. 645], a loan agreement bearing the maximum legal interest rate also provided that if the borrower failed to pay such interest it would be added to the principal and thereafter itself bear interest at the same rate, i.e., compound interest. The court rejected the borrower's claim that the latter provision made the agreement usurious: "Whether a transaction is usurious must be determined as of the time of the transaction. An agreement which is not usurious in its inception cannot become so by reason of the borrower's subsequent default. [Citations.] The penalty provisions to which [the borrower] now objects come into play only in the event of his default. Such payments are not regarded as interest on the loan itself, but as a penalty for nonperformance of a legitimate agreement." (Accord *Penzner* v. *Foster* (1959) 170 Cal.App.2d 106, 109-110 [338 P.2d 533], and cases cited.) In short, "It would be [inequitable] to the lender to permit a borrower to transform a legal loan into a usurious one simply by

defaulting on his interest payments." (Note, *California Usury Law, supra*, 6 Sw. U. L.Rev. at p. 213.)

Another contingency within the borrower's control is his exercise of a prepayment option. A loan agreement may provide the maximum legal rate of interest plus an additional charge if the borrower elects to repay all or part of the principal before it is due. Although the charge is often calculated in terms of extra days—commonly 180—of "unearned interest," it does not make the transaction usurious: "The courts have allowed the lender to assess a premium because the prepayment of the loan and its concurrent penalty rest entirely within the borrower's control; he need not exercise his option." (Note, *California Usury Law, supra*, 6 Sw. U. L.Rev. at p. 204.)

For example, in *French* v. *Mortgage Co.* (1940) 16 Cal.2d 26, a loan agreement bearing the maximum legal interest rate also allowed the borrower to prepay his obligation upon giving the lender timely notice and " 'a sum of money equal to 90 days' unearned interest on the then unpaid principal as a bonus for such prepayment privilege.' " (*Id.* at pp. 27-28.) The court rejected the borrowers' claim that the latter provision made the agreement usurious: "the allegedly excessive interest collected was brought about by the voluntary act of [the borrowers] in exercising the prepayment option. The rule is that in such circumstances the transaction is not thereby made usurious." (*Id.* at p. 31.) The court drew an analogy to cases of a borrower's voluntary default, reasoning that " 'there is still no usury, unless we hold that a . . . contract nonusurious if complied with by the debtor, may be rendered by him usurious and illegal by his voluntary default in respect thereto. That a debtor cannot so bring his creditor under heavy penalties is too clear to admit of discussion' " (*id.* at p. 33; accord *Abbott* v. *Stevens* (1955) 133 Cal.App.2d 242, 247-249 [284 P.2d 159]).

A final example of a contingency within the borrower's control is a loan agreement bearing the maximum legal interest rate and providing that the principal amount of the loan is not to be disbursed to the borrower in a lump sum at the outset, but over time in installments. Such agreements are often used in construction loans, with the proceeds being paid out as the building progresses. Whether the agreement is usurious depends on who controls the disbursement: " 'the mere fact that the whole sum loaned is not drawn promptly by the borrower does not render the loan usurious, provided the whole sum was held subject to the borrower's order . . . .' If the agreement contemplates that the entire loan shall be available to the borrower, mere delay in its payment to him, in the absence of intent to evade the Usury Law, does not make the loan usurious, but if, as a condition of the loan the borrower is *required* to leave part with the lender, interest in

excess of the legal rate on the sum actually available is usurious." (*Penziner v. West American Finance Co., supra,* 133 Cal.App. 578, 590, italics added.)

By contrast, the contractual provision now before us is—as the majority correctly hold—neither a loan nor a forbearance to enforce a loan; it is an ordinary single-payment credit sale of goods by a wholesaler. There is therefore no risk that any borrower will deprive any lender of the interest on his loan or subject him to the penalties of the usury law. Indeed, there is no borrower at all, no lender, and no interest—less still usurious interest. It follows that there is neither need nor occasion in this case to invoke the debtor's act rule, and the majority err in doing so.[5]

## IV

Finally, I am troubled by an unanswered question in this case. The trial court awarded the late charges to Southwest as "prejudgment interest" (see Civ. Code, § 3289, subd. (a)), and the Court of Appeal sustained that award. But because these charges—as the majority correctly hold—are not "interest" of any kind, they are not "prejudgment interest" either. Then what are they? Southwest contended in the Court of Appeal that they are valid liquidated damages, and amicus curiae makes the same contention in this court. (See Loomis, *Crestwood Lumber Company v. Citizens Savings & Loan Association: The Usury Law and Liquidated Damages in Sale of Goods Transactions* (1980) 10 Golden Gate L.Rev. 553.) The majority decline to reach the question because of "our limitation of review to the issue of usury" (maj. opn., *ante,* p. 709). I do not agree that our order limiting review prevents us from reaching this question: in my view the question is "fairly included," within the meaning of rule 29.2(b) of the California Rules of Court, in the larger issue of usury set forth in our order.

I reluctantly agree, however, that we must leave this question unanswered for the time being. I do so because the parties have neither briefed

---

[5] Two decisions of the Court of Appeal have fallen into the same error. In *Fox v. Federated Department Stores, Inc., supra,* 94 Cal.3d 867, 884, the court correctly held that a "nonrevolving" retail charge account, in which payment in full is due within 25 days of receipt of the monthly statement, is not subject to the usury law. The court correctly reasoned that the finance charges of 1½ percent per month assessed on default "are not interest" (*ibid.*), explaining elsewhere in its opinion that the transaction was a sale rather than a loan or forbearance. Unfortunately the court also relied—erroneously and unnecessarily—on both the time-price doctrine and the debtor's act rule. (*Ibid.*)

In *O'Connor v. Televideo System, Inc., supra,* 218 Cal.App.3d 709, 716, the court correctly held that a single-payment credit sale of goods by a wholesaler—the issue before us now—is not subject to the usury law. The court correctly reasoned that such a transaction is not a forbearance (*id.* at p. 717), but it also relied—erroneously and unnecessarily—on the debtor's act rule (*id.* at pp. 716-717).

nor argued the difficult problems that will arise in any attempt to give a definitive answer on this point. Two questions in particular need to be addressed. First, is this case governed by the liquidated damages statute (Civ. Code, § 1671) or by the special statute dealing with breach of an obligation to pay a liquidated sum (Civ. Code, § 3302)?[6] Second, what is the effect on this question of the provisions of the California Uniform Commercial Code? Until such questions are fully litigated, this effort to clarify the law of usury must regrettably remain incomplete.

Broussard, J., concurred.

---

[6] Civil Code section 3302 provides that "The detriment caused by the breach of an obligation to pay money only, is deemed to be the amount due by the terms of the obligation, with interest thereon."