[No. B209219. Second Dist., Div. Eight. Aug. 21, 2009.]

THE PEOPLE, Plaintiff and Appellant, v.
CARLOS MANUEL THRASHER, Defendant and Respondent.

## COUNSEL

Steve Cooley, District Attorney, Phyllis Asayama and Natasha S. Cooper, Deputy District Attorneys, for Plaintiff and Appellant.

Scott Hallabrin, Emelyn Rodriguez and Heather Rowan for Fair Political Practices Commission as Amicus Curiae on behalf of Plaintiff and Appellant.

Kevin Barry McDermott for Defendant and Respondent.

## OPINION

**RUBIN, Acting P. J.**—The People of California appeal from the trial court's dismissal of an information against Carlos Manuel Thrasher, a member of the West Covina Planning Commission, charging him with perjury and three misdemeanor violations of the Political Reform Act of 1974 (Political Reform Act). (Gov. Code, § 81000 et seq.)[1] We affirm.

### FACTS AND PROCEEDINGS

In June 2001, Carlos Manuel Thrasher signed a three-year lease to rent office space from Eastland Tower Partnership. In January 2003, Thrasher,

[1] All undesignated section references are to the Government Code, unless otherwise indicated.

who was in the military reserves, was called to active duty and deployed to Iraq. Upon his activation, Thrasher sent a letter to his landlord, Ziad Alhassen, whose holding company controlled Eastland Tower Partnership. Thrasher told Alhassen of his deployment and asked that his lease be held in "abeyance" while he was in Iraq. Alhassen replied that the law permitted Thrasher to terminate the lease, but Alhassen did not know of any law that allowed Thrasher an "abeyance" in rent, which Alhassen demanded Thrasher continue to pay unless he vacated the office. Thrasher did not vacate the office; instead, he let someone else run his business while he was away and he stopped paying rent.

In the spring of 2004, Alhassen learned Thrasher had returned home from Iraq. Alhassen contacted Thrasher and demanded the unpaid back rent. Thrasher countered with the proposal that Alhassen extend the lease that was about to expire and forgive Thrasher's past due rent. Alhassen refused to waive the unpaid rent. When the lease ended that summer without the parties reaching an agreement, Thrasher vacated the office. Alhassen thereafter threatened to sue Thrasher. In December 2004, Thrasher and Alhassen settled their dispute. Thrasher signed a promissory note to Eastland Tower Partnership for $17,165.62 in past rent, with the outstanding balance to accrue 10 percent annual interest. Thrasher's monthly payments were $500 until the note was paid in full.

In December 2005, Thrasher was appointed to the West Covina Planning Commission (planning commission). Upon his appointment, he signed under penalty of perjury a "Form 700," a document required by amicus curiae Fair Political Practices Commission (FPPC) that obligated Thrasher to disclose various economic interests. The form directed Thrasher to identify any "loans" he had received during the relevant reporting period. He did not list any.

During Thrasher's service on the planning commission, South Hills Homes Partnership, a company controlled by Alhassen, had business before the commission.[2] The partnership was developing a gated community in West Covina and needed an extension to file its final tract map. As a commissioner, Thrasher twice acted on the partnership's extension request: the first time in January 2006 to ask his fellow commissioners to postpone their decision on

---

[2] Alhassen is president and CEO of South Hills Homes Corporation. South Hills Homes Corporation is a general partner in South Hills Homes Partnership.

the extension to the next month's meeting, and the second time in February 2006 to argue against the extension. Following Thrasher's argument against an extension at the second meeting, the planning commission denied it. According to Alhassen, the denial had a devastating financial effect on the development.

In 2007, the People charged Thrasher with perjury and three misdemeanor violations of the Political Reform Act for not disclosing the existence of his promissory note to Eastland Tower Partnership. The People's theory was Thrasher's note represented a loan *from* the partnership *to* him that he should have identified on his Form 700. After a preliminary hearing, the magistrate found Thrasher's undisclosed note was a reportable loan. The magistrate therefore found probable cause to order Thrasher to stand trial.

The People thereafter filed an information. The information alleged Thrasher committed perjury by declaration when he signed Form 700, certifying the truth of its contents without disclosing his promissory note on the schedule identifying "loans" to him. The information also alleged Thrasher's failure to disclose the "loan" was a misdemeanor violation of the Political Reform Act requiring him to disclose his economic interests. (§§ 87300, 87302, subd. (b), 91000.) And finally, the information alleged in two counts that Thrasher's participation in both the January and February 2006 planning commission deliberations involving the request by South Hills Homes Partnership for an extension to file its final tract map violated the Political Reform Act's prohibition against conflicts of interest. (§ 87100 [public official must not participate in governmental decision in which official knows, or has reason to know, he has a financial interest].)

Thrasher pleaded not guilty. Additionally, he moved under Penal Code section 995 for dismissal of the perjury allegation because his agreement with Eastern Tower Partnership over unpaid rent was settlement of a debt, not a loan from the partnership to him. Thus, he argued, probable cause did not exist to charge him with making a false statement for not disclosing the note as a loan on his Form 700. He also moved for dismissal of the misdemeanor charges because the three counts were predicated on Thrasher's having received income from Eastland Tower Partnership, which he had not under the applicable statutes. The court granted Thrasher's motion under section 995 to dismiss the perjury charge. The court also dismissed the misdemeanor charges under Penal Code section 991. The People appeal from the dismissals.

## DISCUSSION

We independently review the preliminary hearing magistrate's order binding defendant over for trial. (*People v. Laiwa* (1983) 34 Cal.3d 711, 718 [195 Cal.Rptr. 503, 669 P.2d 1278]; *People v. Eid* (1994) 31 Cal.App.4th 114, 125 [36 Cal.Rptr.2d 835].)

### 1. *No Perjury: The Note Was Not a Loan Nor Did It Memorialize One*

Form 700 directed Thrasher to identify loans to him. Thrasher did not identify his promissory note to the Eastern Tower Partnership as a loan. The preliminary hearing magistrate found Thrasher's omission was probable cause to believe Thrasher had committed perjury. The magistrate explained: "[W]e're talking also about the cash value of that debt, because the debt is actually functionally the same as cash. Mr. Alhassen is deprived of the use of that and deprived of the ability to distribute it to his other shareholders. And [Thrasher], by not paying it, derives the benefit of being able to use the $17,500 for other things. [¶] So, and the [Government] Code and the Fair Political Practices forms all talk about any source of income. Since that's functionally income, I'm going to deny your motion [to dismiss the charges] . . . ."

In contrast to the preliminary hearing magistrate, the trial court held the note was not a loan. Thus, the court found Thrasher had not made a false statement by not identifying the note as a loan on his Form 700. Without a false statement, the court found no probable cause to conclude Thrasher had committed perjury. The court therefore granted Thrasher's section 995 motion to dismiss the perjury charge. The court ruled correctly.

■ A loan cycles money from the lender to the borrower and back to the lender. The statutory definition of "loan" makes that cycling plain: "A loan of money is a contract by which one *delivers* a sum of money to another, and the latter agrees to *return* at a future time a sum equivalent to that which he borrowed." (Civ. Code, § 1912, italics added; see *Southwest Concrete Products v. Gosh Construction Corp.* (1990) 51 Cal.3d 701, 705 [274 Cal.Rptr. 404, 798 P.2d 1247] ["A loan of money is the delivery of a sum of money to another under a contract to return at some future time an equivalent amount."].) ■ Here, the first step of that cycle was missing: Eastern Tower Partnership did not give Thrasher money. The partnership instead gave Thrasher office space, for which Thrasher promised to pay rent. Money

flowed in only one direction—from Thrasher to the partnership, first as rent when due and later as satisfaction of past due rent. Underscoring that the partnership was not lending money, the partnership performed its side of the transaction by making the office space available to Thrasher and could have performed the essence of its side of the bargain even if it had been penniless, with no money to its name and only lint in its outturned pockets.

The People argue Thrasher's note was a loan to him because the partnership did not have use of the money owed under the note before Thrasher made his payments. The People's argument is unconvincing, for the partnership's inability to use the money Thrasher owed did not transmute his debt into a loan. In any economic transaction where payment is not simultaneous with delivery of goods or services, the supplier of the good or service does not have use of the money until payment is received. But that delay in receiving payment does not make the supplier a lender to the purchaser by any common understanding of the word "loan." For example, diners at a restaurant often linger at the table for some time before they pay the bill, even though they have finished their meal and the plates have long been cleared away. By the People's reasoning, the restaurant is extending a loan to the diners while the restaurant awaits its payment because the restaurant does not have use of the money the diners owe for their meal. To push the analogy even closer to Thrasher's dealings with Eastland Tower Partnership, sometimes unscrupulous restaurant guests "dine and dash" without paying the bill at all. One might call those guests any number of things, but one would not argue they had received a loan from the restaurant. And neither of these restaurant transactions would be transmuted into a loan if the diner later signed an IOU in favor of the eatery. Likewise here. Eastland Tower Partnership rented Thrasher office space. Whether Thrasher properly should have paid the rent the partnership claimed was due when he vacated the office is not before us. The question before us is whether Thrasher's later agreement to pay the back rent meant he had a loan from the partnership. We answer "no."

■ Amicus curiae FPPC quarrels with the trial court's reliance on the "dictionary definition" of "loan." The FPPC argues "loan" is a term of art under the Political Reform Act that treats an unpaid debt as a loan. In support, the FPPC cites advice letters from the FPPC's legal staff to public officials informing those officials of the staff's interpretation that an unpaid debt is a loan under the act. (See, e.g., Cal. FPPC advice letter No. A-93-154 (May 24, 1993) [1993 WL 841059, p. *2] [court order to pay opponent's litigation costs is a debt, which if unpaid, may be deemed a loan]; Cal. FPPC advice letter

No. A-93-468 (Dec. 24, 1993) [1993 WL 840762, p. *2] [followup letter to same public official as Cal. FPPC advice letter No. A-93-154, reiterating interpretation of the first letter].) We consider the FPPC's advice letters because the FPPC's views about a statutory scheme that it enforces merit strong consideration. "However, [the FPPC's views] are not binding on us. Ultimately, questions of statutory and regulatory construction are the responsibility of the courts. The level of deference we accord to an agency's interpretation turns on a legally informed, commonsense assessment of its merits in the context before us. We consider whether the agency has a comparative interpretive advantage over the courts, and also whether its interpretation is likely to be correct. Factors suggesting the agency is correct include indications of careful consideration by senior officials, particularly a collective decision reached after public notice and comment . . . ." (*Brown v. Fair Political Practices Com.* (2000) 84 Cal.App.4th 137, 150 [100 Cal.Rptr.2d 606].) Applying those factors, advice letters from the FPPC staff merit less weight than we might give to codified regulations or the FPPC's formal opinions. (See, e.g., *Downey Cares v. Downey Community Development Com.* (1987) 196 Cal.App.3d 983 [242 Cal.Rptr. 272].)[3] In any case, the advice letters offered by the FPPC cite no authority that its definition of "loan" for enforcement of administrative actions applies to the criminal law. (See *Smith v. Superior Court* (1994) 31 Cal.App.4th 205, 212 [36 Cal.Rptr.2d 897] [noting FPPC advice letters defining a term were "not legal authority," but court considered them in its analysis because they were "consistent with the ordinary meaning of the term"]; *City of Agoura Hills v.*

---

[3] *Downey Cares v. Downey Community Development Com., supra*, 196 Cal.App.3d 983, considered the weight to give an FPPC private advice letter. At pages 992 to 993, the court concluded: "For several reasons, this [advice] letter provides no legal authority for appellants' argument. First, a private advice letter is not a formal opinion of the FPPC; it is not intended as a declaration of policy or a general opinion on the law. Government Code section 83114 distinguishes between a formal opinion (subd. (a)) and written advice (subd. (b)). Under the commission's regulations, a formal opinion is adopted by the commission after a public hearing. At least two weeks prior to the hearing a staff memorandum is made available to members of the commission, the Attorney General, the Franchise Tax Board, the Secretary of State, the person requesting the opinion, other interested persons, and the public. Any interested person may submit memoranda, briefs, arguments, and, with permission, oral testimony. (Cal. Admin. Code, tit. 2, § 18322.) An advice letter provided pursuant to Government Code section 83114, subdivision (b), on the other hand, is apparently provided by a staff member and 'does not constitute an Opinion of the Commission . . . nor a declaration of policy by the Commission.' " (Original ellipsis.) (See also Cal. Code Regs., tit. 2, § 18329, subd. (b)(7) ["Formal written advice provided pursuant to Government Code Section 83114(b) does not constitute an Opinion of the Commission issued pursuant to Government Code Section 83114(a) nor a declaration of policy by the Commission. Formal written advice is the application of the law to a particular set of facts provided by the requestor. While this advice may provide guidance to others, the immunity provided by Government Code Section 83114(b) is limited to the requestor and to the specific facts contained in the formal written advice."].)

*Local Agency Formation Com.* (1988) 198 Cal.App.3d 480, 498 [243 Cal.Rptr. 740] ["The advice of the FPPC as an agency empowered by the Legislature to interpret and enforce the Political Reform Act is entitled to weight . . . [but] the ultimate resolution of legal issues regarding statutory interpretation lies with the courts."].)

Amicus curiae and the People cite a number of advice letters that opine a loan is deemed reportable income under the Political Reform Act. Those advice letters are not helpful here, however, because the issue is not whether a loan is income—it is—but whether Thrasher received a loan. (See also Cal. FPPC advice letter No. A-92-654 (Jan. 20, 1993) [1993 WL 840701, p. *1] [money mayor borrowed to buy store was reportable income]; Cal. FPPC advice letter No. I-94-279 (Sept. 28, 1994) [1994 WL 912746, p. *3] [money owed from company doing business with city to company owned by city official was reportable income to official]; Cal. FPPC advice letter No. I-95-059 (Apr. 5, 1995) [1995 WL 911899, pp. *1–*2] [personal friend made interest-free loan to public official with no repayment schedule; if arrangement changed to require repayment, unpaid debt would be considered income].) Thrasher does not quarrel with the FPPC's determination to treat loans as reportable income to loan recipients in order to avoid the subterfuge of a public official masking income as a "loan" that, with a knowing nod and wink, the official never repays. The possibility of mischief under those circumstances is obvious, giving the FPPC good reason to broadly define "loans" and "income" in its administrative and enforcement actions—and, indeed, the Political Reform Act anticipated such a possibility by defining "income" to include a loan. (§§ 82000, 82030, subd. (a), 87207, subd. (a).) But here, the People allege perjury by Thrasher on a form prepared by the FPPC because he did not identify his promissory note to Eastland Tower Partnership as a loan to him even though that note did not meet the statutory definition of a loan.[4]

The People argue Thrasher's debt to Eastland Tower Partnership was a financial entanglement with Alhassen that the citizens of West Covina would reasonably want to know about in judging Thrasher's performance of his official duties.[5] We agree with the factual assumption in this argument, but not its legal effect. The People advance this argument to assert Thrasher's

---

[4] We recognize the Legislature is free to change the Civil Code's definition of a loan to encompass the type of promissory note that Thrasher signed here. Additionally, the Legislature presumably has the power to craft for public officials governed by the Political Reform Act a special, technical meaning for the word "loan." The Legislature having done neither, however, the ordinary definition of "loan" in section 1912 of the Civil Code applies.

[5] Strictly speaking, the company with business before the planning commission was South Hills Homes Partnership, not Eastland Tower Partnership, which held Thrasher's promissory note. Nevertheless, Alhassen was CEO of both companies and his holding company had an ownership interest in both entities. His holding company owned Hassen Eastland Corporation,

failure to list the promissory note was a material misstatement, materiality being an element of perjury. The issue is not, however, whether the promissory note was large enough to be material, but whether the note was a *loan*, which goes to the element in the crime of perjury of whether Thrasher made a false statement.[6]

Our final thought on the decision we reach today: There may very well be gaps in the legislation regulating conflicts and disclosures for public officials. Although we conclude the statutory language does not permit the present prosecutions, the Legislature, of course, may avoid that result in the future. Presumably, by law a public official could be required to report any "promissory note" that the official signed as a promisor whether or not the note was founded on a loan. Form 700, in its present iteration, however, does not call for the reporting of promissory notes.

## 2. No Misdemeanor Violations

The People charged Thrasher with three misdemeanor violations of the Political Reform Act: two counts of acting with a conflict of interest and one count of failing to disclose an economic interest.[7] We conclude the trial court properly dismissed these charges.

### A. No Conflict of Interest

The People alleged Thrasher acted on an official matter in which he had a conflict of interest when he twice participated in planning commission decisions involving the request of Alhassen's South Hills Homes Partnership for an extension to file its final tract map. Section 87100 prohibits a public official from acting in a matter in which the official knew, or had reason to know, he had a financial interest.[8] Section 87103 defines a "financial interest"

which was a general partner in Eastland Tower Partnership. It also owned South Hills Homes Corporation, which was a general partner in South Hills Homes Partnership.

[6] Because we find the note was not a loan, we need not address an additional potential obstacle to prosecuting Thrasher for perjury: his arguable lack of scienter. To commit perjury, the defendant must also *know* his statement is false. (Pen. Code, § 118, subd. (a); CALCRIM No. 2640.) Thus, even if "loan" carried a special meaning in Form 700 (see fn. 4, *ante*), the People would need to prove beyond a reasonable doubt that Thrasher knew the special meaning applied but willfully ignored it. (Pen. Code, § 118, subd. (a); CALCRIM No. 2640.)

[7] Form 700 refers to "economic interest," and the information does as well. The relevant statutes use "financial interest." Without deciding whether the two terms are legally distinct in this context, we use the statutory language except when we refer specifically to Form 700 or the information.

[8] Section 87100 states: "No public official at any level of state or local government shall make, participate in making or in any way attempt to use his official position to influence a governmental decision in which he knows or has reason to know he has a financial interest."

as any "source of income" of $500 or more.[9] The People's charges fail because Thrasher's promissory note to Eastland Tower Partnership was not income to Thrasher. Thus, Alhassen and South Hills Homes Partnership were not a source of income to Thrasher. Consequently, Thrasher did not violate section 87100 when he participated in the planning commission's decisions involving the partnership.

■ The closest Thrasher may have come to receiving income from Alhassen or his partnerships might arguably have been when Thrasher occupied the office he leased from Eastland Tower Partnership without paying rent between his January 2003 deployment to Iraq and the summer of 2004 when he vacated the office. The People did not prosecute Thrasher, however, on a theory of imputed income for his rent-free use of the office. But even if they had, a charge of violating section 87100 still would have failed because any income to be imputed to Thrasher from occupying the office ended when he vacated it no later than July 2004. A public official acts with a conflict of interest for matters involving sources of income received "within 12 months prior to the time when the decision is made." (§ 87103, subd. (c).) Thrasher's participation in official matters involving South Hills Homes Partnership occurred in early 2006, more than 12 months after he vacated the Eastland Tower Partnership office in the summer of 2004. Thus, even if his failure to pay rent to Alhassen affiliate Eastland Tower Partnership meant he had received income from Alhassen affiliate South Hills Homes Partnership, his planning commission activities took place more than 12 months after he received that income.

### B. Failure to Disclose Economic Interest

■ The People alleged Thrasher violated sections 87300 and 87302, subdivision (b), of the Political Reform Act when he failed to disclose an economic interest by not identifying his promissory note as a loan to him on his Form 700. Section 87300 requires governmental bodies to adopt conflict of interest codes and makes violation of those codes a violation of the Political Reform Act, which in turn is a misdemeanor under section 91000. Section 87302, subdivision (b) requires designated governmental employees to file disclosure statements under the conflict of interest code of their governmental agency. Pursuant to these statutes, Thrasher filed a Form 700 shortly after his

---

[9] Section 87103 states: "A public official has a financial interest in a decision within the meaning of Section 87100 if it is reasonably foreseeable that the decision will have a material financial effect [on] . . . [¶] . . . [¶] (c) Any source of income . . . aggregating five hundred dollars ($500) or more in value provided or promised to, received by, the public official within 12 months prior to the time when the decision is made."

appointment to the planning commission. The form called for Thrasher to disclose, among other things, loans he had received during the reporting period covered by the form. The People contend Thrasher violated his obligation to disclose by not listing his promissory note on the form. As we have already held, the note was not a loan.

■ We alternatively find the charge of failing to disclose an economic interest collapses because any income Thrasher arguably received from Alhassen or his partnerships was outside the statutory reporting period. Although the People did not pursue a theory of imputed income, as we have observed, Thrasher arguably received income when he occupied the office without paying rent between January 2003 and the summer of 2004. However, section 87302, subdivision (b), which the People allege Thrasher violated, obligates a public official newly assuming office to report income received only in the 12 months before assuming office. (*Ibid.* ["[E]ach new designated employee shall file a statement within 30 days after assuming office . . . disclosing . . . income received during the 12 months before . . . assuming office . . . ."].) Thrasher's appointment to the planning commission took effect on December 9, 2005, and he signed his assuming-office Form 700 on December 25, 2005. Because he had vacated Alhassen's office no later than July 2004, more than 12 months earlier, any income arguably imputable to him from using the office rent free fell outside his Form 700 reporting period.

### C. *Reliance on Penal Code Section 991 Harmless Error*

The court dismissed the three misdemeanor charges based on Penal Code section 991. The People contend the court erred because section 991 governs probable cause determinations of a defendant accused of a misdemeanor and who is in custody at the time of his arraignment. Thrasher was not in custody. Regardless, whether the court cited the wrong statute by relying on section 991, the error, if any, was harmless as the court had the power to dismiss the misdemeanor charges under section 995 because they were joined to a felony charge. (*People v. Thiecke* (1985) 167 Cal.App.3d 1015, 1018 [213 Cal.Rptr. 731]; 4 Witkin & Epstein, Cal. Criminal Law (3d ed. 2000) Pretrial Proceedings, § 232, p. 443.) Both the People and Thrasher agree the validity of the misdemeanor charges rested on the People's premise that Thrasher's promissory note was a loan, and thus income, to Thrasher. For the reasons we have already discussed, the trial court correctly dismissed the misdemeanor charges regardless of whether it miscited Penal Code section 991 when it did so.

## DISPOSITION

The judgment of dismissal is affirmed.

Bigelow, J., and Bauer, J.,* concurred.

---

*Judge of the Orange Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.