TO BE PUBLISHED IN THE OFFICIAL REPORTS

OFFICE OF THE ATTORNEY GENERAL
State of California

XAVIER BECERRA
Attorney General

_____

|  |  |  |
|---|---|---|
| OPINION | : | No. 11-201 |
| of | : | December 26, 2018 |
| XAVIER BECERRA
Attorney General | : | |
| MANUEL M. MEDEIROS
Deputy Attorney General | : | |

_____

THE HONORABLE STACEY L. MONTGOMERY, DISTRICT ATTORNEY FOR LASSEN COUNTY, has requested an opinion on the following questions:

1.     Are a California charter school and its governing body subject to the Ralph M. Brown Act and the California Public Records Act?

2.     Is a California charter school's governing body subject to Government Code section 1090?

3.     Is a California charter school's governing body subject to the Political Reform Act of 1974?

4.     Are the books and records of California charter schools subject to review and inspection by a grand jury?

1

CONCLUSIONS

1.      Yes, a California charter school and its governing body are subject to the Ralph M. Brown Act and the California Public Records Act.

2.      Yes, a California charter school's governing body is subject to Government Code section 1090.

3.      Yes, a California charter school's governing body is subject to the Political Reform Act of 1974.

4.      Yes, in general, the books and records of California charter schools that are chartered by a school district or county board of education are subject to review and inspection by a grand jury.  However, the books and records of California corporate charter schools that are directly chartered by the State Board of Education are not subject to review and inspection by a grand jury.

ANALYSIS

We are presented with a series of questions about whether charter schools in California are subject to the same public-integrity statutes that apply to traditional public schools. For the reasons set out below, we conclude that charter schools are subject to these salutary laws.

Charter schools are a class of public schools.  The California Department of Education offers this description:

> A charter school is a public school that provides instruction in any combination of grades, kindergarten through grade twelve. Parents, teachers, or community members may initiate a charter petition, which is typically presented to and approved by a local school district governing board. California *Education Code* (*EC*) also allows, under certain circumstances, for county boards of education and the State Board of Education to be charter authorizing entities.

> Specific goals and operating procedures for a charter school are detailed in the agreement between the charter authorizing entity and the charter developer. A charter school is exempted from many of the statutes and regulations that apply to school districts. Students enroll in charter

schools on a voluntary basis.[1]

Charter schools are created pursuant to the Charter Schools Act of 1992.[2] In passing the Act, the Legislature declared its purposes as follows:

It is the intent of the Legislature, in enacting this part, to provide opportunities for teachers, parents, pupils, and community members to establish and maintain schools that operate independently from the existing school district structure, as a method to accomplish all of the following:

(a) Improve pupil learning.

(b) Increase learning opportunities for all pupils, with special emphasis on expanded learning experiences for pupils who are identified as academically low achieving.

(c) Encourage the use of different and innovative teaching methods.

(d) Create new professional opportunities for teachers, including the opportunity to be responsible for the learning program at the schoolsite.

(e) Provide parents and pupils with expanded choices in the types of educational opportunities that are available within the public school system.

(f) Hold the schools established under this part accountable for meeting measurable pupil outcomes, and provide the schools with a method to change from rule-based to performance-based accountability systems.

(g) Provide vigorous competition within the public school system to stimulate continual improvements in all public schools.[3]

One of the signature purposes of the Act is to free charter schools from the "educational

---

[1] Cal. Dept. of Education, Charter Schools FAQ Section 1, https://www.cde.ca.gov/sp/cs/re/qandasec1mar04.asp#q1 [as of Dec. 26, 2018].

[2] Ed. Code, § 47600 et seq.; Stats.1992, ch. 781.

[3] Ed. Code, § 47601.

3

bureaucracy"[4] that pertains in traditional school districts, by way of a statutory exemption from many of the laws that govern traditional school districts.[5] "Charter schools are grounded in private-sector concepts such as competition-driven improvement . . . , employee empowerment and customer focus. But they remain very much a public-sector creature, with in-bred requirements of accountability and broad-based equity. . . . "[6]

California's Constitution mandates a system of free public schools.[7] As creatures of that system, charter schools are funded by state taxes,[8] and they may not charge tuition.[9] Further, unlike private schools, charter schools may not restrict admissions on the basis of personal characteristics such as gender or religion.[10] They are required to meet statewide educational standards and to conduct the same pupil assessments that are required of noncharter public schools.[11] Charter school teachers must hold state teaching credentials,[12] and they enjoy the same collective-bargaining rights[13] and retirement

---

[4] *Wells v. One2One Learning Foundation* (2006) 39 Cal.4th 1164, 1201 (*Wells*).

[5] Ed. Code, § 47610; *Wells*, *supra*, 39 Cal.4th at p. 1201. This exemption is familiarly referred to as the "mega-waiver." (See, e.g., *Anderson Union High School Dist. v. Shasta Secondary Home School* (2016) 4 Cal.App.5th 262, 278.)

[6] *Wilson v. State Bd. of Education* (1999) 75 Cal.App.4th 1125, 1129 (*Wilson*), quoting Com. on Cal. State Government Organization and Economy, rep., *The Charter Movement: Education Reform School by School* 1 (Little Hoover Com., March 1996).

[7] See Cal. Const., art. IX, § 5.

[8] See Ed. Code §§ 47614.5, 47630, 47633–47635; *Today's Fresh Start, Inc. v. Los Angeles County Office of Education* (2013) 57 Cal.4th 197, 205 (*Today's Fresh Start*) (charter schools are "public schools funded with public money but run by private individuals or entities rather than traditional public school districts").

[9] Ed. Code, § 47605, subd. (d)(1).

[10] Ed. Code, §§ 220, 235, 47605, subd. (d)(1); see also Ed. Code, § 47605, subd. (b)(4) (county board must deny petition that does not affirmatively guarantee nonsectarian character of charter school) and subd. (5)(G) (charter must describe "[t]he means by which the charter school will achieve a racial and ethnic balance among its pupils that is reflective of the general population residing within the territorial jurisdiction of the school district to which the charter petition is submitted").

[11] Ed. Code, §§ 47605, subd. (c)(1), 47605.6, subd. (d)(1).

[12] Ed. Code, §§ 47605, subd. (l), 47605.6, subd. (l).

[13] See, e.g., Ed. Code, § 47611.5, subds. (a), (d); *California Teachers Assn. v. Public Employment Relations Bd.*, 169 Cal. App.4th 1076 (applying Educational Employment

4

benefits[14] that public-school teachers enjoy.

A charter school may be chartered by a school district,[15] by a county board of education,[16] or directly by the State Board of Education.[17] The Legislature intends that charter schools should "operate independently from the existing school district structure."[18] To that end, the Legislature has authorized a charter school to "elect to operate as, or be operated by, a nonprofit public benefit corporation."[19] We are informed that the majority of charter schools operating today have opted for a corporate charter structure, although some have declined the option in favor of operating as dependent affiliates of a chartering district.[20]

At the same time, regardless of governance structure, a charter school is under "the exclusive control of the officers of the public schools"[21] and is a "school district" for purposes of the allocation of education funds.[22] Governing officials of a charter school are themselves "officers of public schools to the same extent as members of other boards of education of public school districts."[23] Indeed, the Constitution "prohibits the transfer

---

Relations Act in favor of charter school teachers).

[14] See Ed. Code, §§ 22119.5, 47611.

[15] Ed. Code, § 47605.

[16] Ed. Code, §§ 47605.5, 47605.6.

[17] Ed. Code, § 47605.8. The Board of Education may not approve a petition except upon a showing that "the proposed state charter school will provide instructional services of statewide benefit that cannot be provided by a charter school operating in only one school district, or only in one county." (Ed. Code, § 47605.8, subd. (b); see *California School Bds. Assn. v. State Bd. of Education* (2010) 186 Cal.App.4th 1298.)

[18] Ed. Code, § 47601.

[19] Ed. Code, § 47604, subd. (a).

[20] See, e.g., *California Teachers Assn. v. Public Employment Relations Bd.*, *supra*, 169 Cal.App.4th at pp. 1079-1080 (describing dependent governance structure). A recent source reports that there are around 330 "affiliated" charters in California. (See Zinshteyn, *Understanding California charter schools: a quick guide* (July 20, 2017), https://edsource.org/2017/10-things-to-know-about-charter-schools/583984 [as of Dec. 26, 2018].

[21] Ed. Code, §§ 47612, subd. (a), 47615, subd. (a)(2).

[22] Ed. Code, § 47612, subd. (c).

[23] *Wilson*, *supra*, 75 Cal.App.4th at 1141.

of authority over any part of the school system to entities outside of the public school system."[24]

Ever since corporate charter schools—which bear attributes of both public and private enterprises—were authorized in California, questions have arisen as to whether they are subject to the public-integrity statutes that apply to public schools and other government entities, including laws requiring open meetings and public access to records, and laws forbidding financial and other conflicts of interest. The Legislature has entertained multiple bills (all vetoed or otherwise unsuccessful) in an effort to clarify the issue.[25]

For example, in 2004 the Legislature proposed forbidding approval of any charter school petition that lacked "an assurance of compliance" with the open-meetings rules embodied in the Brown Act,[26] indicating that the problem was not so much a lack of coverage under the act as a lack of compliance with the Brown Act. That bill also declared that charter schools are subject to the Public Records Act, and further specified that this was "declaratory of existing law."[27]

For another example, the committee analysis for Assembly Bill No. 2115 in 2007 included this observation:

> According to the author's office, "This bill requires charter school governing board members to comply with the same conflict of interest policies by which school district governing board members currently abide. Recent news reports of charter school board members engaging in inappropriate financial mismanagement have highlighted the need for charter school conflict of interest laws *to be clarified*. While charter schools are given more autonomy than public schools, their governing boards have authority over public funds to be used for the educational

---

[24] *Mendoza v. State* (2007) 149 Cal.App.4th 1034, 1039 (re transfer of school district control to the mayor).

[25] Assem. Bill No. 709 (2015-2016 Reg. Sess.), Assem. Bill No. 913 (2013-2014 Reg. Sess.), Assem. Bill No. 572 (2009-2010 Reg. Sess.), Assem. Bill No. 2115 (2007-2008 Reg. Sess.), Assem. Bill No. 1860 (2003-2004 Reg. Sess.).

[26] Assem. Bill No. 1860 (as enrolled Aug. 26, 2004), § 1, p. 7 (proposed Ed. Code, § 47605, subd. (b)(5)(Q)).

[27] Assembly Bill No. 1860 (as enrolled Aug. 26, 2004), § 1, p. 12 (proposed Ed. Code, § 47605, subd. (n).

benefit of their students. Charter school governing boards should be held to at least the same standard as school district governing boards."[28]

Similarly, the Legislative Counsel has described three different bills aimed at this issue as "expressly" stating that charter schools are subject to the Brown Act and the Public Records Act.[29]

This is the legal environment in which we have been asked to evaluate whether, under the existing state of the law, charter schools, including corporate charter schools, are subject to the same public-integrity statutes that govern traditional public schools. Seeing that corporate charter schools are licensed and paid to participate in the essential public function of providing a mandatory free education to California's children, we conclude that they are bound by all of the public-integrity laws that we examine here. Below, we provide separate analyses for each body of law.

**Question 1**

The first question here is whether charter schools and their governing bodies are subject to the so-called "sunshine laws," that is, the open-meeting rules of the Brown Act,[30] and the information-access rules of the Public Records Act.[31] We conclude that charter schools are subject to these laws.

---

[28] Sen. Com. on Education, Analysis of Assem. Bill No. 2115 (2007-2008 Reg. Sess.) (June 18, 2008), pp. 2-3 (emphasis added).

[29] Assem. Bill No. 572 (2009-2010 Reg. Sess.) as enrolled Aug. 26, 2010; Assem. Bill No. 913 (2013-2014 Reg. Sess.) as enrolled Aug. 28, 2014; Assem. Bill No. 709 (2015-2016 Reg. Sess.) as enrolled Aug. 24, 2016. We may properly look to Legislative Counsel's Digest to aid us in ascertaining the Legislature's intent. (See, e.g., 95 Ops.Cal.Atty.Gen. 59, 64 fn. 37 (2012); 80 Ops.Cal.Atty.Gen. 297, 303 (1997); see also *Mt. Hawley Insurance Co. v. Lopez* (2013) 215 Cal.App.4th 1385, 1401, citations omitted ("Although the Legislative Counsel's summary digests are not binding, they are entitled to great weight").

[30] The Ralph M. Brown Act (Gov. Code, § 54950 et seq.) sets out open-meeting rules for local agencies, and the Bagley-Keene Open Meeting Act (Gov. Code, § 11120 et seq.) sets out parallel rules for state agencies. Because most charter schools are organized as local entities, and for the sake of convenience, we refer primarily to the Brown Act in this Opinion.

[31] Gov. Code, § 6250 et seq.

The Brown Act was passed in 1953[32] with this sweeping declaration of purpose:

> In enacting this chapter, the Legislature finds and declares that the public commissions, boards and councils and the other public agencies in this State exist to aid in the conduct of the people's business. It is the intent of the law that their actions be taken openly and that their deliberations be conducted openly.

> The people of this State do not yield their sovereignty to the agencies which serve them. The people, in delegating authority, do not give their public servants the right to decide what is good for the people to know and what is not good for them to know. The people insist on remaining informed so that they may retain control over the instruments they have created.[33]

The Brown Act guarantees "the public's right to attend the meetings of public agencies"[34] and thus curb misuse of the democratic process.[35]

The Public Records Act was enacted in 1968.[36] Its purpose is to "facilitate the public's right to monitor governmental activities on the principle that 'access to information concerning the conduct of the people's business is a fundamental and necessary right of every person in this state.'"[37]

Both the Brown Act and the Public Records Act are applicable to a "local agency" and to the "legislative body" of a local agency.[38] The Brown Act defines "local agency" as "a county, city, . . . city and county, town, school district, municipal corporation, district, political subdivision, or any board, commission or agency thereof, or other local public agency."[39] Similarly, the Public Records Act defines "local agency" to include "a

---

[32] 1953 Stats., ch. 1558, § 1.

[33] Gov. Code, § 54950.

[34] *Epstein v. Hollywood Entertainment Dist. II Business Improvement* (2001) 87 Cal.App.4th 862, 868.

[35] *Cohan v. City of Thousand Oaks* (1994) 30 Cal.App.4th 547, 555.

[36] 1968 Stat. ch. 1473, p. 2946, § 39.

[37] 91 Ops.Cal.Atty.Gen. 11, 11-12 (2008), quoting Gov. Code, § 6250.

[38] See Gov. Code, §§ 6253 (Public Records Act), 54952.2 (Brown Act).

[39] Gov. Code, § 54951.

8

county; city. . . ; city and county; school district; municipal corporation; district; political subdivision; or any board, commission or agency thereof; other local public agency; or entities that are legislative bodies of a local agency pursuant to subdivisions (c) and (d) of Section 54952."[40]

Thus, the question that needs answering is whether a charter school is a "school district" or "other local public agency" for purposes of the Brown Act and the Public Records Act. To answer this question, we apply familiar rules of statutory interpretation. "We start with the statute's words, which are the most reliable indicator of legislative intent. We interpret relevant terms in light of their ordinary meaning, while also taking account of any related provisions and the overall structure of the statutory scheme to determine what interpretation best advances the Legislature's underlying purpose."[41]

Starting with the language of the statutes in question, we observe that a "school district" is specifically listed as a "local agency" under both the Brown Act and the Public Records Act.[42] Further, from looking at related statutes and at the statutory scheme as a whole, we know that a charter school is a "school district" for specified purposes including being "under the exclusive control of the officers of the public schools for purposes of Section 8 of Article IX of the California Constitution, with regard to the appropriation of public moneys to be apportioned to any charter school . . . ."[43]

Taken together, these provisions come very close to disposing of the issue. After all, "school districts" are subject to sunshine laws,[44] and charter schools are "school districts" for purposes of receiving state funding.[45] What charter schools do with the public money that they receive is a matter of legitimate concern to the taxpaying public. While this definition technically leaves open the question whether charter schools are *not* "school districts" for purposes *other* than receiving state funding, we see no need to try to ascertain here what those might be.[46] Receiving funding from the state for the purpose of

---

[40] Gov. Code, § 6252, subd. (a).

[41] *In re R.T.* (2017) 3 Cal.5th 622, 627, citations and internal quotation marks omitted.

[42] Gov. Code, §§ 6252, subd. (a), 54951. School districts were included in both the original Brown Act (Stats. 1953, ch. 1588, § 1, p. 3270) and in the original Public Records Act (Stats. 1968, ch. 1473, § 39, p. 2946).

[43] Ed. Code, § 47612, subds. (a), (c).

[44] See Gov. Code, §§ 6252, subd. (a) (Public Records Act), 54951 (Brown Act).

[45] Ed. Code, § 47612, subd. (c); see also *id.*, § 47650.

[46] The issue of charter schools' public/private status has also arisen in the context of efforts by corporate charter schools to claim governmental immunity from suit. (See

9

educating public schoolchildren is reason enough to require that corporate charter schools' business—which is also the people's business—be conducted in the open.

What is more, we are constrained by the Constitution of California to construe both the Brown Act and the Public Records Act broadly to further the people's right of access to the meetings and documents of bodies conducting the public's business.[47] The promise of public access to public information is fixed in Article I of our Constitution,[48] just as Article IX establishes a system of free public schools under the exclusive control of the public school system.[49] Reading the statutes liberally, we are convinced that the public has a right to expect transparency from charter schools because they are licensed and paid by the state to participate in the core function of educating California's children.[50]

---

*Wells v. One2One Learning Foundation* (2006) 39 Cal.4th 1164.) In *Wells*, the Supreme Court concluded that a chartering school district is a governmental entity and therefor immune from liability under the California False Claims Act (CFCA; Gov. Code, § 12650 et seq.). (See *Wells,* supra, 39 Cal.4th at pp. 1199-1200 and fns. 2, 22.) On the other hand, the chartered schools themselves are "persons" subject to liability within the express terms of the false claims statutes. (See *Wells*, *supra*, 39 Cal.4th at pp. 1199-1203.) Nothing in the *Wells* decision undermines the law that charter schools are "school districts" for purposes of receiving funds. (See Ed. Code, § 47612, subd. (c).)

[47] Cal. Const., art. I, § 3, subd. (b)(2); see also *Golightly v. Molina* (2014) 229 Cal.App.4th 1501, 1512 (Brown Act to be construed liberally in favor of openness).

[48] California Constitution, article I, section 3 states in part:

(b) (1) The people have the right of access to information concerning the conduct of the people's business, and, therefore, the meetings of public bodies and the writings of public officials and agencies shall be open to public scrutiny.

(2) A statute, court rule, or other authority, including those in effect on the effective date of this subdivision, shall be broadly construed if it furthers the people's right of access, and narrowly construed if it limits the right of access. A statute, court rule, or other authority adopted after the effective date of this subdivision that limits the right of access shall be adopted with findings demonstrating the interest protected by the limitation and the need for protecting that interest.

[49] Cal. Const., art. IX, § 6 ("No school . . . shall be, directly or indirectly, transferred from the Public School System or placed under the jurisdiction of any authority other than one included with the Public School System.").

[50] See, e.g., *Copley Press, Inc. v. Superior Court* (1998) 63 Cal.App.4th 367, 376

10

Accordingly, we conclude that a charter school is a "school district … or other local public agency" within the meaning of the Brown Act and the Public Records Act and therefore subject to those laws. A charter school's governing body is, therefore, a "legislative body" within the meaning of Government Code section 54952, subdivision (a).[51]

Before leaving the subject, however, we address two possible objections to our conclusion: (1) that the doctrine of "mega-waiver" under Education Code section 47610 precludes applying these public access laws to charter schools, and (2) that charter schools' corporate governance structure exempts them from the laws' coverage. We address, and reject, each contention in turn.

*"Mega-waiver"*

We have considered the argument that, even if a charter school is a local agency within the meaning of the public access statutes, it is nevertheless *exempted* from compliance with the Brown Act and the Public Records Act by virtue of the so-called "mega-waiver" provision of Education Code section 47610.

---

("secrecy in public education is not in the public interest").

[51] We take note of Government Code 54952, subdivision (c)(1), which states that, in addition to the governing body of a local agency, the term "legislative body" for purposes of the Brown Act means:

A board, commission, committee, or other multimember body that governs a private corporation, limited liability company, or other entity that either:

(A) Is created by the elected legislative body in order to exercise authority that may lawfully be delegated by the elected governing body to a private corporation, limited liability company, or other entity.

(B) Receives funds from a local agency and the membership of whose governing body includes a member of the legislative body of the local agency appointed to that governing body as a full voting member by the legislative body of the local agency.

Some commenters argue that, because subdivision (c) specifically mentions corporations, we should conclude that subdivision (c) defines the sole circumstances in which the governing body of a corporate charter school may be subjected to the Brown Act. We are not persuaded. Regardless of the precise legal form under which it operates, the governing body of a local agency is the governing body of a local agency and therefore subject to the Brown Act under Government Code section 54952, subdivision (a). Whether or not it also falls under the terms of subdivision (c) is beside the point.

11

Section 47610 provides that, "A charter school shall comply with [the Charter Schools Act] and all of the provisions set forth in its charter, but *is otherwise exempt from the laws governing school districts*, except all of the following: . . . ."[52]  Exceptions are made for teacher retirement plans, state loans, building standards, and the minimum age for public school attendance.  Based on this provision, some argue that the Brown Act and the Public Records Act do not apply to charter schools because those are among the "laws governing school districts" from which charter schools are exempt.  We disagree.

The Brown Act and the Public Records Act are not just "laws governing school districts."  They are laws of general application governing *all* local agencies and therefore to charter schools.[53]  No court has ever construed section 47610's "mega-waiver" to apply to a law of general application.[54]  Certainly nothing in the legislative history of section 47610 supports a reading that would immunize charter schools from affording public access to its meetings and documents.[55]  "It is a well-established rule of statutory construction that the Legislature does not intend to legislate in contravention of existing public policy.  Without the most cogent and convincing evidence, a court will never

---

[52] Ed. Code, § 47610.

[53] This is also the position taken by the Department of Education on its "Charter Schools Frequently Asked Questions" page:

> Q.3. Are charter schools subject to open meeting requirements?

> Yes. Although charter schools are exempt from most laws applicable to school districts, they are not exempt from laws that generally apply to public agencies, including the legal requirement to hold open meetings. California Government Code Section 54950 et. seq. (commonly referred to as the "Brown Act") requires that the deliberations and actions taken by local (public) agencies be conducted openly.

(https://www.cde.ca.gov/sp/cs/re/qandasec3mar04.asp [as of Dec. 26, 2018].)

[54] The Court of Appeal in *Wilson* characterized section 47610 as exempting charter schools from "most state laws pertaining *uniquely* to school districts." (*Wilson*, *supra*, 75 Cal.App.4th at p. 1130, emphasis added.)

[55] We note that the bill enacting section 47610 was meant to exempt charter schools from "virtually all *Education Code* provisions and State Department [of Education] rules and regulations." (See Assem. Ways & Means Com., Analysis of Sen. Bill No. 1448 (1991-1992 Reg. Sess.) as amended July 10, 1992, p. 1 (hearing date Aug. 18, 1992) (emphasis added); see also Assembly Ways & Means Com., Republican Analysis (April 19, 1992).)

12

attribute to the Legislature the intent to disregard or overturn a sound rule of policy."[56]

To shield charter schools from the reach of public access statutes would set those schools apart from all other public schools. All of the other components of the public school system—the State Board of Education, state universities, community colleges, county boards of education, and local school boards—are subject to open-meeting laws (the Brown Act for local agencies and the Bagley-Keene Open Meeting Act for state agencies).[57] Every one of them is subject to the Public Records Act. We are aware of no cogent or convincing evidence that would justify sheltering charter schools from sunshine laws.

The Charter Schools Act was intended to give charter schools "substantial freedom to achieve academic results free of interference by the public *educational bureaucracy*."[58] In our view, that goal is entirely consistent with allowing structured public access to the meetings and documents of these public educational institutions. Indeed, the Charter Schools Act itself identifies as its constituency community members as well as parents, teachers, and pupils associated with a specific charter school.[59]

We conclude that Education Code section 47610's "mega-waiver" provision does not exempt charter schools from open-meetings laws and public-records laws.

---

[56] *Meninga v. Raley's, Inc.* (1989) 216 Cal.App.3d 79, 89-90 (internal citation omitted).

[57] See Gov. Code, § 11127 ("Each provision of [the Bagley-Keene Open Meeting Act] shall apply to every state body unless the body is specifically excepted from that provision by law or is covered by any other conflicting provision of law."); Ed. Code § 92030 (public schools subject to Bagley-Keene "except as otherwise provided in this article." The article provides exceptions for, e.g., national security, honorary awards, gifts, investments, etc. (Ed. Code, § 92030.)

The University of California is not part of the public school system. (*California Teachers Assn. v. Hayes* (1992) 5 Cal.App.4th 1513, 1523, fn. 6.) Nevertheless, the Regents of the University of California are made subject to the Bagley-Keene Open Meeting Act. (Ed. Code, § 92030.)

[58] *Wells*, *supra*, 39 Cal.4th at p. 1201, emphasis added; see also Ed. Code, § 47601 (Charter Schools Act declaration of intent); *Today's Fresh Start*, *supra*, 57 Cal.4th at pp. 205-206 ("The Legislature intended its authorization of charter schools to improve public education by promoting innovation, choice, accountability, and competition").

[59] Ed. Code, § 47601.

13

*Corporate governance*

We have also considered the argument that charter schools should be exempt from the Brown Act and the Public Records Act because they are legally structured as corporations, not public agencies.  But we see no sound basis for conditioning the public's right to transparency on a charter school organizer's chosen mode of governance.

The argument that corporate charter schools are merely private corporations confuses the corporate operator of the charter school with the charter school itself.  Under the express terms of the statute, the decision to operate as a corporation is that of the charter school, not the corporation.[60]  A corporation is unable to operate as a charter school, or to operate a charter school, unless and until it receives a charter from the appropriate chartering authority.  "The chartering authority controls the application approval process, with sole power to issue charters."[61]  "Approval is not automatic, but can be denied on several grounds, including presentation of an unsound educational program."[62]  It is the *charter school* that is a part of the public school system, regardless of its governance structure.[63]  If a corporate charter school loses its charter, the corporation may continue in existence,[64] but it ceases to be a charter school.[65]

Here, our concern is with the governing body of the local agency itself, i.e., the charter school, not with the charter school's corporate parent.  The members of a corporate charter school's governing body "are officers of public schools to the same

---

[60] Ed. Code, § 47604, subd. (a); see also Ed. Code, §§ 47605, subd. (b)(5)(D) (petitioners must specify mode of governance for proposed charter school), 47605.6, subd. (b)(5)(E) (same).

[61] *Wilson*, *supra*, 75 Cal.App.4th at p. 1140, citing Gov. Code, §§ 47605, 47605.5.

[62] *Wilson*, *supra*, 75 Cal.App.4th at p. 1140, citing Gov. Code, § 47605, subd. (b)(1).

[63] Ed. Code, § 47615, subd. (a)(1).

[64] See, e.g., *Liberty Family Academy Charter School v. North Monterey County Unified School Dist.* (No. H034551), Amicus Brief of California Charter Schools Assn., 2010 WL 3866847 at pp. *14-23.

[65] See, e.g., *In re Gateway Academy Charter School* (E.D. Cal. 2010), 2010 WL 9474768, p. 5 (Bankruptcy proceeding involving Gateway Academy Charter School: "Once Gateway's charter was revoked, it ceased being a public school and had no legal entitlement to any state funding under California law. . . .  The only basis for funding a charter school is that a charter school is part of the public school system.").

extent as members of other boards of education of public school districts."[66]

For all the reasons discussed above, we conclude in response to Question 1 that a California charter school and its governing body are subject to the Ralph M. Brown Act and to the California Public Records Act.

**Question 2**

The second question is whether a California charter school's governing body is subject to Government Code section 1090, which broadly prohibits conflicts of interest in public contracts. We conclude that it is.

Government Code section 1090 states:

(a) Members of the Legislature, state, county, district, judicial district, and city officers or employees shall not be financially interested in any contract made by them in their official capacity, or by any body or board of which they are members. Nor shall state, county, district, judicial district, and city officers or employees be purchasers at any sale or vendors at any purchase made by them in their official capacity.

\* \* \* \*

(c) As used in [article 4, commencing with section 1090] "district" means any agency of the state formed pursuant to general law or special act, for the local performance of governmental or proprietary functions within limited boundaries.[67]

The prohibition against self-dealing has a long history in California law.[68] Government Code section 1090[69] can be traced back to an 1851 enactment,[70] which itself has been deemed to express the ancient common-law doctrine against conflicts of interest. Section 1090 generally forbids public officials from participating in making

---

[66] *Wilson, supra*, 75 Cal.App.4th at p. 1141.

[67] Gov. Code, § 1090, subds. (a), (c).

[68] *City of Oakland v. California Const. Co.* (1940) 15 Cal.2d 573, 576.

[69] Hereafter sometimes referred to simply as "section 1090."

[70] Stats. 1851, ch. 136, § 1, p. 522; see *Lexin v. Superior Court* (2010) 47 Cal.4th 1050, 1072, fn. 10.

15

government contracts in which they have prohibited interests. The purpose of the rule is to ensure that "every public officer be guided solely by the public interest, rather than by personal interest, when dealing with contracts in an official capacity."[71] Violation of section 1090 is a felony,[72] and contracts entered into in violation of section 1090 are generally considered void.[73]

Over time, the scope of the rule has expanded to include the officers of any "district," defined broadly as "*any* agency of the state formed pursuant to general law or special act, for the local performance of governmental or proprietary functions within limited boundaries."[74]

"Any" means any.[75] We harbor no doubt that a charter school is an "agency of the state, formed pursuant to general law . . . for the local performance of governmental . . . functions within limited boundaries."[76] Because members of a charter school board of directors are deemed to be "officers of public schools to the same extent as members of other boards of education of public school districts,"[77] they are subject to the prohibitions

---

[71] *Thomson v. Call* (1985) 38 Cal.3d 633, 650 (*Thomson*).

[72] Gov. Code, § 1097, subd. (a).

[73] *Thomson v. Call*, *supra*, 38 Cal.3d at pp. 645-646.

[74] Stats. 1970, ch. 447, § 1, p. 895; see now Gov. Code, § 1090, subd. (c) (emphasis added).

[75] *Santa Clarita Organization for Planning and the Environment (SCOPE) v. Abercrombie* (2015) 240 Cal.App4th 300, 312.

As we have stated, "Section 1090's conflict-of-interest ban must be interpreted broadly and enforced assiduously to promote the statute's salutary purpose, while exceptions to the rule must be construed narrowly to avoid undermining that purpose." (94 Ops.Cal.Atty.Gen. 22, 25 (2011); see 99 Ops.Cal.Atty.Gen. 67, 72, fn. 28 (2016).)

[76] *Santa Clara County Local Transportation Authority v. Guardino* (1995) 11 Cal.4th 220, 233. It might be argued that a charter school providing statewide services is not performing governmental functions "within limited boundaries." But it is apparent that the definition of "district" merely compares a district's place in the governmental hierarchy with the state itself; the definition does not purport to *limit* the district's service area. To conclude otherwise would have some charter schools covered by section 1090, while others are not, based solely on service area. This would be an anomalous and substantively indefensible construction, which we must, therefore, reject.

[77] *Wilson*, *supra*, 75 Cal.App.4th at p. 1141.

16

of section 1090.[78]

**Question 3**

The third question asks whether a charter school's governing body is subject to the Political Reform Act of 1974.[79]  In accord with decisions of the Fair Political Practices Commission, we conclude that charter school boards are subject to that law.

The Political Reform Act[80] was enacted by initiative measure to give effect to the principle that, "Public officials, whether elected or appointed, should perform their duties in an impartial manner, free from bias caused by their own financial interests or the financial interests of persons who have supported them."[81]

---

[78] Until 1985, the Education Code contained anticorruption statutes that applied specifically to school officials.  (See Stats. 1955, ch. 1125, § 3, p. 2119 (Ed. Code, § 1011.3), repealed and reenacted by Stats. 1959, ch. 2, §§ 2-3, p. 623 (Ed. Code, § 910); Stats. 1963, ch. 629, § 2, pp. 1540-1541 (Ed. Code, §§ 1172-1175.5); Stats. 1976, ch. 1010, § 2.)

In 1985 the Legislature repealed the education-specific statutes, enacting in their stead Education Code section 35233, which applies section 1090 and its associated rules to "members of governing boards of school districts." (Stats. 1985, ch. 816, §§ 1-2.)

But even when school board members were exempt from section 1090 itself, they were nevertheless subject to like scrutiny under the Education Code.  (See, e.g., Ed. Code, § 35239; see generally Stats. 1872, ch. 556, § 104, p. 852 ["No School Trustee or member of any Board of Education shall be, directly or indirectly, interested in any contract made by the Board of which he is a member; and any contract mad in violation of this provision shall be null and void."]; Pol. Code 1872, § 1876; General Laws (1921), Act 7519 (School Code), § 2.810 ["No school trustee or member of any board of education must be interested in any contract made by the board of which he is a member"].)

In light of this long history of applying anticorruption rules in the schools' context, we cannot conclude that the Legislature intended to give charter school officials a comprehensive new exemption from longstanding prohibitions against self-dealing.

[79] Gov. Code, § 81000 ("This title shall be known and may be cited as the 'Political Reform Act of 1974'").

[80] Gov. Code, § 81000 et seq.

[81] Gov. Code, § 81001, subd. (b).

17

Public officials governed by the Act include "every member, officer, employee or consultant of a state or local government agency."[82] "Local government agency" means a "county, city or *district of any kind including school district*, or any other local or regional political subdivision, or any department, division, bureau, office, board, commission or other agency of the foregoing."[83]

In 1998, the same year in which the Legislature amended the Charter Schools Act to permit a charter school to be operated by or as a nonprofit corporation,[84] the general counsel of the Fair Political Practices Commission issued an Advice Letter concluding that board members of a charter school's nonprofit corporation were subject to the Political Reform Act's conflict-of-interest provisions.[85]

Key to its conclusion was the Commission's determination that the charter school was a "local government agency" within the meaning of Government Code section 82048.[86] Using a four-part test to determine whether a nonprofit corporation meets the definition of a local government agency, the Commission concluded that the school (1) was formed at the impetus of a government agency; (2) was substantially supported by public funds; (3) performed a public function as its principal purpose; and (4) was treated as a public agency, (i.e., a school district) by other statutory provisions, namely the Charter Schools Act.[87]

The Fair Political Practices Commission is the agency responsible for enforcing the conflict-of-interest provisions of the Political Reform Act,[88] and its interpretations of the Act are entitled to deference.[89]

---

[82] Gov. Code, § 82048, subd. (a).

[83] Gov. Code, § 82041, italics added.

[84] Ed. Code § 47604, subd. (a); 1998 Stat. ch. 34, § 3.

[85] FPPC, *Walsh* Advice Letter, No. A-98-234; see also FPPC, *Fadely* Advice Letter, No. A-02-223. FPPC Advice Letters are available at http://www.fppc.ca.gov.

[86] See Gov. Code, § 82048, subd. (a).

[87] FPPC, *Walsh* Advice Letter, *supra*, at pp. 4-7.

[88] See Gov. Code, §§ 83100, 83111.

[89] *Californians for Political Reform Foundation v. Fair Political Practices Com.* (1998) 61 Cal.App.4th 472, 484.

The Commission has a statutory obligation, upon request, to provide "written advice with respect to the person's duties" under the Act. (Gov. Code, § 83114, subd. (b).) The Commission's views about the meaning of the Act "merit strong

18

We conclude, in accord with the Commission's views, that a corporate charter school's governing body is subject to the Political Reform Act's conflict-of-interest provisions.

**Question 4**

The last question is whether the books and records of a California charter school are subject to review and inspection by a grand jury pursuant to Penal Code section 933.6. With respect to schools that are chartered by either a local school district or a county board of education, we conclude that such materials are subject to grand jury review.[90]

"The California grand jury has three basic functions: to weigh criminal charges and determine whether indictments should be returned [citation]; to weigh allegations of misconduct against public officials and determine whether to present formal accusations requesting their removal from office [citation]; and to act as the public's 'watchdog' by investigating and reporting upon the affairs of local government [citation]. Of these functions, the watchdog role is by far the one most often played by the modern grand jury in California."[91] Under the supervision of the superior courts,[92] the general powers and duties of county grand juries[93] include the investigation of county, city, and district affairs.[94] A "grand jury has no inherent investigatory powers beyond those granted by the Legislature."[95]

---

consideration." (*People v. Thrasher* (2009) 176 Cal.App.4th 1302, 1309.)

[90] We reach a different conclusion with respect to those relatively few charter schools that are chartered directly by the State Board of Education, as discussed further below.

[91] *McClatchy Newspapers v. Superior Court* (1988) 44 Cal.3d 1162, 1170.

[92] See *People v. Superior Court (1973 Grand Jury)* (1975) 13 Cal.3d 430, 438.

[93] Pen. Code, §§ 914-939.91.

[94] See, Pen. Code, §§ 925, 925a, 928, 933.1-933.5; see 78 Ops.Cal.Atty.Gen. 290 (1995) (grand jury may investigate and report on district functions).

[95] *McClatchy Newspapers v. Superior Court, supra,* 44 Cal. 3d at p. 1172, internal citations omitted; *Bd. of Trustees of Calaveras Unified School Dist. v. Leach* (1968) 258 Cal.App.2d 281, 285 (*Bd. of Trustees*).

19

It has been suggested that Penal Code section 933.6[96] provides a basis for grand jury scrutiny of a corporate charter school. We agree that it does, with respect to schools chartered by local school districts or county boards of education.[97] Section 933.6 provides:

"A grand jury may at any time examine the books and records of any nonprofit corporation established by or operated on behalf of a public entity the books and records of which it is authorized by law to examine, and, in addition to any other investigatory powers granted by this chapter, may investigate and report upon the method or system of performing the duties of such nonprofit corporation."[98]

The books and records of local school districts and county boards of education are subject to grand jury review.[99] Therefore if a school chartered by a local school district or county board of education is operated "on behalf of" its local chartering authority, then

---

[96] We have previously concluded that the books and records of a traditional public school district are subject to grand jury inspection. (46 Ops.Cal.Atty.Gen. 144, 146 (1965); see 78 Ops.Cal.Atty.Gen., *supra,* at pp. 290, 292-293; see also *Bd. of Trustees, supra,* 258 Cal.App.2d at p. 285, fn. 2.) It might, therefore, be argued that, since a charter school is deemed to be a school district for some purposes (Ed. Code, § 47612, subd. (c)), a charter school is likewise subject to grand jury investigation. However, our conclusion regarding grand jury scrutiny of school districts rested on Penal Code section 933.5 and its provision that "[a] grand jury may at any time examine the books and records of any special-purpose assessing or taxing district . . . ." (78 Ops.Cal.Atty.Gen., *supra*, at pp. 292-293.) A charter school does not enjoy either assessing or taxing powers of a traditional school district. (See *Wells, supra*, 39 Cal.4th at pp. 1194-1202 (distinguishing charter schools from traditional school districts based on, among other things, taxing ability).) Accordingly, we do not believe that a grand jury's power under Penal Code section 933.5 extends to charter schools.

[97] A recent report of the Superintendent of Public Instruction indicates that the State Board of Education directly charters 23 schools. (See Tom Torlakson, "California Department of Education Report on the Financial Condition of State Board of Education-Authorized Charter Schools" (June 1, 2014) http://www.cde.ca.gov/be/pn/im/documents/memodsibcsdjun14item01.doc [as of Dec. 26, 2018].)

[98] Pen. Code, § 933.6.

[99] See 78 Ops.Cal.Atty.Gen., *supra*, at p. 290 (school districts subject to grand jury scrutiny); see generally Pen. Code, § 925 (grand juries investigate operations, accounts, and records of officers, departments, or functions of county).

the books and records of these charter schools are, in turn, subject to grand jury scrutiny.[100]  Thus, the issue boils down to the question whether a charter school operates "on behalf of" the local or county school board.  We conclude that it does.

To reach this conclusion, we examine the language of section 933.6 to ascertain the intent of the Legislature.[101]  To act "on behalf of" another is to act "in the interest of," "as a representative of," or "for the benefit of" another.[102]  Although a charter school, particularly one with a corporate governance structure, is generally conceived and organized by private individuals, it can have no operational or political existence as part of the public school system unless it first has a charter from a public school authority.[103]

Moreover, the language of the Charter Schools Act reflects the subordination of the charter school to the "supervisorial oversight" of its chartering authority.[104]  A chartering authority may decline to grant a charter petition if the "school presents an unsound educational program" or if the "petitioners are demonstrably unlikely to successfully implement the program set forth in the petition."[105]  A chartering authority is required to monitor the fiscal condition of each charter school under its authority, and to ensure that each charter school under its authority completes all proper reports.[106]  A

---

[100] All charter schools, regardless of chartering entity, are also subject to the Attorney General's authority to investigate whether the corporation is wasting charitable assets, breaching its fiduciary duties or engaging in self-dealing transactions or improper loans. (See Corp. Code, § 5250; Gov. Code, § 12588.)  And all entities—including charter schools, whatever their chartering authority or corporate status—are subject to the authority of state agency heads (including, but not limited to, the Attorney General) to conduct confidential investigations and hearings.  (See Gov. Code, § 11180, et seq.)

[101] 92 Ops.Cal.Atty.Gen. 46, 48 (2009).

[102] *Madden v. Cowen & Co.* (9th Cir. 2009) 576 F.3d 957, 973, quoting Webster's 3d New Internat. Dict. (2002), p. 198; see *Standard Microsystems Corp. v. Winbond Electronics Corp*. (2009) 179 Cal.App.4th 868, 901, disapproved on another ground in *Even Zohar Const. & Remodeling, Inc. v. Bellaire Townhouses, LLC* (2015) 61 Cal.4th 830, 833; see also 79 Ops.Cal.Atty.Gen. 109, 110 (1996).

[103] See, e.g., *In re Gateway Academy Charter School, supra*, (E.D. Cal. 2010), 2010 WL 9474768, p. *5, discussed at note 60 *ante.*

[104] See, e.g., Ed. Code, § 47613 (charges for "supervisorial oversight"); *Wilson, supra*, 75 Cal.App.4th at p. 1142 ("Charter schools are under the jurisdiction of chartering authorities").

[105] Ed. Code, § 47605, subd. (b)(1), (2).

[106] Ed. Code, § 47604.32, subd. (a)(3), (4).

21

chartering authority may revoke a charter if the school violates its charter; fails to achieve student outcomes; fails to follow generally accepted accounting principles or engages in fiscal mismanagement; or violates any provision of law.[107]

These conditions of empowerment, oversight, and control establish that a charter school acts "on behalf of" its chartering authority. Furthermore, the history of Penal Code section 933.6 demonstrates that the Legislature intended to "ensure that grand juries, in their 'watchdog' capacity, enjoy the statutory authorization to investigate the full range of local government agencies."[108] Indeed, the legislation was introduced to "expand the authority of grand jury investigatory powers to include housing authorities and nonprofit corporations which are established by or operated for the benefit of the public."[109] Receiving substantial public funding for the provision of public education, charter schools certainly act "for the benefit of the public."

Accordingly, we conclude that the books and records of a California charter school that is chartered by a school district or county board of education are subject to review and inspection by a grand jury pursuant to Penal Code section 933.6.

On the other hand, section 933.6 does not apply to schools that are chartered directly by the State Board of Education. Section 933.6 applies only when the grand jury has authority to investigate the entity on whose behalf a nonprofit corporation is being operated. Since there is no authority for a grand jury to examine the books and records of a state agency, section 933.6 cannot be a source of authority for grand jury examination of the books and records of charter schools that are chartered directly by the State Board of Education.[110] Thus, we conclude that the books and records of a California charter

---

[107] Ed. Code, § 47607, subd. (c)(1).

[108] See Sen. Rules Com., Off. of Sen. Floor Analyses, Rep. on Assem. Bill No. 3643 (1985-1986 Reg. Sess.), p. 1.

[109] *Id.* at pp. 1-2; see also Assem. Com. on Local Gov., Analysis of Assem. Bill No. 3643 (1985-1986 Reg. Sess.), as introduced Feb. 20, 1986, p. 1 (purpose of measure "to expand the authority of Grand Jury investigatory powers to include housing authorities, and nonprofit corporations which are established by and operate at the benefit of the public").

[110] However, such schools, like other charter schools, may be subject to audit by the California State Auditor. (Cf. *Cornejo v. Lightbourne* (2013) 220 Cal.App.4th 932, 940 ("State Auditor's function can be described as a grand jury with jurisdiction over state agencies"); see, e.g., California State Auditor, Magnolia Education and Research Foundation and Magnolia Science Academies: 2014-135 Audit Scope and Objectives (Aug. 5, 2014) https://www.bsa.ca.gov/reports/scope/2014-135 [as of Dec. 26, 2018].)

school that is chartered by the State Board of Education are not subject to review and inspection by a grand jury pursuant to Penal Code section 933.6.

*****