FILED

JAN 18 2023

SUSAN M. SPRAUL, CLERK
U.S. BKCY. APP. PANEL
OF THE NINTH CIRCUIT

**ORDERED PUBLISHED**

# UNITED STATES BANKRUPTCY APPELLATE PANEL
## OF THE NINTH CIRCUIT

|  |  |
|---|---|
| In re:<br>E. MARK MOON,<br><br>　　　　　Debtor. | BAP Nos. NC-22-1103-SGB<br>　　　　　NC-22-1117-SGB<br>　　　　　(cross-appeals) |
| MILESTONE FINANCIAL, LLC,<br>　　　　Appellant/Cross-Appellee,<br>v.<br>E. MARK MOON; LORI H. MOON,<br>　　　　Appellees/Cross-Appellants. | Bk. No.　20-30711<br>Adv. No. 20-03117<br><br>**OPINION** |

Appeal from the United States Bankruptcy Court
for the Northern District of California
Dennis Montali, Bankruptcy Judge, Presiding

APPEARANCES:
Bernard Kornberg, Esq. of Practus LLP argued for appellant/cross-appellee;
John P. McDonnell, Esq. argued for appellees/cross-appellants.

Before: SPRAKER, GAN, and BRAND, Bankruptcy Judges.

SPRAKER, Bankruptcy Judge:

## INTRODUCTION

When is a usurious forbearance not a usurious forbearance?

According to the California Supreme Court, when it is a mere modification

of a credit sale transaction under the "time-price" doctrine. *Ghirardo v.*

*Antonioli*, 8 Cal. 4th 791, 804 (1994), *as modified on denial of reh'g* (Feb. 2,

1995). *Ghirardo* held that a pre-foreclosure modification of a credit sale transaction—including a forbearance on collection or enforcement of the underlying debt—is not subject to California's usury laws. *Id.* (citing with approval *DCM Partners v. Smith*, 228 Cal. App. 3d 729, 739 (1991)). *Ghirardo* reasoned that the seller otherwise can and likely will foreclose and then could charge a "new" buyer—including the prior owner—a high interest rate free of usury law constraints as part of a new credit sale. *Id. Ghirardo*, therefore, concluded that applying usury laws to credit sale modifications would elevate form over substance. *Id.*

Milestone Financial, LLC appeals from the bankruptcy court's judgment that its Settlement Agreement, Indemnity and First Amendment to Promissory Note Secured by Deed of Trust ("Settlement Agreement") with chapter 7[1] debtor E. Mark Moon, and his wife Lori H. Moon, was a usurious forbearance. It contends that *Ghirardo*'s holding should be extended to forbearances subject to California's usury laws when the original loan transaction was subject to, but exempt from, those laws. We disagree with Milestone that *Ghirardo* can, or should be, extended to cover the Settlement Agreement. Accordingly, we AFFIRM the bankruptcy court's usury ruling.

The Moons cross-appeal from the bankruptcy court's award of post-maturity interest on the obligation underlying Milestone's forbearance.

---

[1] Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1532.

None of the Moons' arguments persuade us that we should depart from the settled rule that creditors generally are entitled to interest at California's legal rate when the loan matures but remains unpaid. Thus, we also AFFIRM the bankruptcy court's post-maturity interest ruling.

## FACTS[2]

### A.     The Milestone loan and the subsequent Settlement Agreement.

The Moons purchased their residence in 1993. In late 2014, facing foreclosure, Lori Moon filed bankruptcy but dismissed it several months later as part of the Moons' efforts to refinance with Milestone. In May 2015, the Moons applied for a loan from Milestone to pay off the outstanding mortgage encumbering their residence. Roughly a month later, the Moons borrowed from Milestone $795,000, payable in two years, and used the loan to pay off all existing encumbrances against their residence. A licensed real estate broker represented the Moons in obtaining the Milestone loan.

The Moons executed a promissory note ("Note") in favor Milestone providing for interest only payments of $7,482.94 per month with a balloon payment for the balance due on July 31, 2017. The Note specified that interest would accrue on the loan at a rate of 11.30% per annum. The Moons secured the Note with a deed of trust against their residence.

Almost immediately, the Moons began to struggle to make the

---

[2] We exercise our discretion to take judicial notice of documents electronically filed in the underlying bankruptcy case and adversary proceeding. *See Atwood v. Chase Manhattan Mortg. Co. (In re Atwood)*, 293 B.R. 227, 233 n.9 (9th Cir. BAP 2003).

required payments on the loan. At times, Milestone needed to advance tax and insurance payments for the residence. Roughly a year into the loan, in an attempt to stave off foreclosure, the parties entered into the Settlement Agreement. Neither party was represented by a real estate broker in entering into the Settlement Agreement.

The parties' recitals reflect that the principal purpose of the Settlement Agreement was to extend the maturity date of the Note, which was reset to come due on July 31, 2019. Despite this evident purpose, the Settlement Agreement contained a provision stating that neither party intended or understood the Settlement Agreement to qualify as a loan or forbearance. The Settlement Agreement also identified the outstanding principal balance of the Note as $902,525.34 and reduced the interest rate from 11.30% to 11.05%. The new monthly payment under the Settlement Agreement was $8,310.75, which again paid interest only. The Settlement Agreement also added a provision that any past due payment, "including the final balloon payment," would incur a 10% late charge. As consideration for the extension of the maturity date and for the interest rate reduction, the Moons agreed to pay Milestone $6,008.71.

B.     **The lawsuit, the bankruptcy filing, and the adversary proceeding.**

The Moons again fell behind on their payments and other loan obligations. As a result, in February 2019, Milestone notified the Moons that it was accelerating the loan, that the entire loan balance needed to be paid off by March 3, 2019, and that a 10% late fee would be assessed unless

4

the loan balance was paid by that date.

The Moons did not pay off the loan balance. They did, however, seek to refinance the balance with a new lender and requested a payoff statement from Milestone to facilitate those efforts. According to the Moons, Milestone was slow to provide the payoff statement and issued multiple quotes with differing amounts. They also contend that the quotes included inaccurate and illegal charges for late fees, interest accrual, and other charges, which significantly inflated the payoff amount. Each of the payoff quotes included a 10% "acceleration penalty." Milestone explained that this was a late charge for nonpayment of the accelerated balloon payment as provided for in the Settlement Agreement.

In September 2019, Milestone recorded a notice of default. In November 2019, the Moons sued Milestone in the San Mateo Superior Court. The operative complaint is the Moons' first amended complaint for breach of contract, fraud, intentional interference with contract, and declaratory relief. The complaint sought damages and an injunction of Milestone's foreclosure proceedings. The gravamen of the claims focused on Milestone's conduct in providing the payoff quotes. For instance, the Moons alleged that Milestone breached its contract "by demanding a payoff amount far in excess of the amount required by any contract, and demanding amounts that were illegal under the law."

Though the state court initially issued a temporary restraining order, it denied the Moons' motion for a preliminary injunction. Shortly

thereafter, Mr. Moon filed a voluntary chapter 13 petition, which he later converted to chapter 11. In October 2020, the Moons removed the state court litigation to the bankruptcy court thereby commencing the underlying adversary proceeding.

## C.  The cross-motions for summary judgment in the adversary proceeding.

The Moons moved for partial summary judgment, but their moving papers focused on three claims not raised in their complaint. They sought determinations that the Settlement Agreement was a usurious forbearance which rendered the 11.05% interest rate void, that the 10% "acceleration fee" on the balloon payment was an illegal and unenforceable penalty, and that the other late fees Milestone assessed were unenforceable and improperly charged multiple times against a single missed payment.

Milestone opposed the Moons' summary judgment motion and moved for summary judgment to dismiss the four causes of actions stated in the first amended complaint. Milestone originally asserted that the Settlement Agreement was exempt from usury restrictions under Cal. Civ. Code § 1916.1 because Carolyn Stuart, one of Milestone's owners, was a licensed real estate broker and was involved in the parties' entering into the Settlement Agreement.[3] Alternately, Milestone claimed that the Settlement Agreement was neither a loan nor a forbearance subject to California's usury laws under the holdings of *Ghirardo v. Antonioli*, 8 Cal.

---

[3] Milestone abandoned this argument on appeal.

4th 791, 804, (1994), *as modified on denial of reh'g* (Feb. 2, 1995); *and DCM Partners v. Smith*, 228 Cal. App. 3d 729, 739 (1991).

The court issued a memorandum decision in January 2022, resolving the cross-motions for summary judgment. It granted Milestone summary judgment dismissing the declaratory relief cause of action holding that the Moons failed to state a claim for relief. On the other hand, the court determined that there were triable issues of fact with respect to the Moons' fraud and intentional interference claims.

On the breach of contract claim, the court initially expressed an intent to deny summary judgment. According to the court, neither of the parties established whether Milestone's payoff demands were in excess of the contractual amount owed or whether Milestone thereby breached the parties' contract. Even so, the court later granted summary judgment in favor of the Moons on their "Second Cause of Action" for breach of contract. However, it held only that the Moons were not liable for interest prior to the maturity date of the loan, or for the acceleration fee, and that the $902,525.34 principal amount owed needed to be reduced to the extent the Moons paid pre-maturity interest.

The court determined that Milestone's charges for pre-maturity interest were unenforceable because the Settlement Agreement was a usurious forbearance. It explained that Cal. Civ. Code § 1916.1's exemption for broker-orchestrated loans and forbearances did not apply because Milestone's forbearance was not connected to a contemporaneous or prior

7

sale, lease, or exchange of real property. The bankruptcy court also rejected Milestone's arguments positing that all forbearances arising from exempt loans also should be exempt from usury restrictions.

Though the court disallowed the acceleration fee, it validated Milestone's other late fees as legally enforceable.

After further briefing, the court additionally held that even though Milestone's charge for pre-maturity interest was unenforceable, California law was clear that the Moons were still liable for post-maturity interest at the legal rate. The Moons then advised the court that they were willing to dismiss their three surviving claims for relief.

The court entered final judgment on May 25, 2022. The judgment granted the Moons relief on their second cause of action for breach of contract "which reduces the amount owed to Milestone secured by [the Moons' residence]." Per the Moons' election, the bankruptcy court dismissed the remaining claims for relief with prejudice. The judgment specified that Milestone was owed $751,009.91, which reflected adjustments from the principal amount of $902,525.34 for payments made, amounts advanced, and post-maturity interest accrued.

Milestone appealed the bankruptcy court's usury ruling. The Moons cross-appealed from the court's ruling on post-maturity interest.

**JURISDICTION**

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334. We have jurisdiction under 28 U.S.C. § 158.

## ISSUES

1.  Did the bankruptcy court err when it held that the Settlement Agreement was a usurious forbearance that was not exempt from usury restrictions under Cal. Civ. Code § 1916.1?

2.  Did the bankruptcy court err when it held that Milestone was entitled to post-maturity interest?

## STANDARD OF REVIEW

Both issues on appeal present questions of law, which we review de novo. *Francis v. Wallace (In re Francis)*, 505 B.R. 914, 917 (9th Cir. BAP 2014). When we review a matter de novo, we give no deference to the bankruptcy court's decision. *Id.*

## DISCUSSION

### A. Appeal from usury ruling.

#### 1. California's usury laws and the broker exemption.

California's Constitution, article XV, section 1, states: "No person, association, copartnership or corporation shall by charging any fee, bonus, commission, discount or other compensation receive from a borrower more than the interest authorized by this section upon any loan or forbearance of any money, goods or things in action." California's usury law prohibits receipt of interest in excess of the prescribed maximum when: (1) the transaction is a loan or forbearance; (2) the borrower's obligation to repay both principal and interest is absolute; and (3) the lender consciously and voluntarily takes an amount of interest, which exceeds the prescribed

9

maximum. *Ghirardo*, 8 Cal. 4th at 798 & n.2. During the period relevant to this appeal, the maximum amount of interest was 10% per annum.[4]

There are myriad exceptions to California's usury laws. *Sw. Concrete Prods. v. Gosh Constr. Corp.*, 51 Cal. 3d 701, 705 (1990). So many that it is sometimes said that "the law's application itself seems to be the exception rather than the rule." *Ghirardo*, 8 Cal. 4th at 807. The only exemption relevant to this appeal is the one for transactions made or arranged by licensed California real estate brokers (the "Broker Exemption") set forth in Cal. Civ. Code § 1916.1.[5] The Broker Exemption provides:

> The restrictions upon rates of interest contained in Section 1 of Article XV of the California Constitution shall not apply to any loan or forbearance made or arranged by any person licensed as a real estate broker by the State of California, and secured, directly or collaterally, in whole or in part by liens on real property. For purposes of this section, a loan or forbearance is arranged by a person licensed as a real estate broker when the broker (1) acts for compensation or in expectation of

---

[4] As amended in 1979, the constitution's usury provision sets a 10% interest rate ceiling on all consumer loans (when the loan of "money, goods, or things in action [is] for use primarily for personal, family, or household purposes") but for other loans permits the interest rate to exceed 10%, so long as it is not more than 5% over the prevailing rate "established by the Federal Reserve Bank of San Francisco on advances to member banks under Sections 13 and 13a of the Federal Reserve Act." CAL CONST. art. XV, § 1 (amended 1979); *see also Soleimany v. Narimanzadeh*, 78 Cal. App. 5th 915, 920 & n.4 (2022) (explaining interest rate caps). The parties agree that 10% was the maximum interest available under the applicable usury laws.

[5] In our discussion when we refer to an "exception" from the usury laws, we mean that it is not subject to the usury laws. When we refer to something as "exempt" from the usury laws, we mean that it is subject to California's usury laws but has been declared exempt from them. This is a distinction that Milestone elides, but the distinction is fatal to its argument.

compensation for soliciting, negotiating, or arranging the loan for another, (2) acts for compensation or in expectation of compensation for selling, buying, leasing, exchanging, or negotiating the sale, purchase, lease, or exchange of real property or a business for another and (A) arranges a loan to pay all or any portion of the purchase price of, or of an improvement to, that property or business or (B) arranges a forbearance, extension, or refinancing of any loan in connection with that sale, purchase, lease, exchange of, or an improvement to, real property or a business, or (3) arranges or negotiates for another a forbearance, extension, or refinancing of any loan secured by real property in connection with a past transaction in which the broker had acted for compensation or in expectation of compensation for selling, buying, leasing, exchanging, or negotiating the sale, purchase, lease, or exchange of real property or a business. The term "made or arranged" includes any loan made by a person licensed as a real estate broker as a principal or as an agent for others, and whether or not the person is acting within the course and scope of such license.

The Broker Exemption was first enacted by voter constitutional initiative in 1979, which amended article XV, section 1, of the California Constitution to exempt from the usury laws, "any loans made or arranged by any person licensed as a real estate broker by the State of California and secured in whole or in part by liens on real property." The constitutional amendment did not speak at all about forbearances. This is consistent with the amendment's underlying legislative purpose. The Broker Exemption was California's response to "a widely perceived need . . . for a greater infusion of investment capital into the field of real estate lending." *Stickel v. Harris*, 196 Cal. App. 3d 575, 581 (1987). The theory was that a usury

11

exemption for loans made or arranged by real estate brokers was necessary to encourage mortgage bankers and brokers to make more real estate secured loans in California to remedy a "severely limited . . . flow of money to California to buy homes, create job opportunities, and for other purposes" resulting from high market rates of interest combined with relatively low usury caps on non-exempt loans. *Del Mar v. Caspe*, 222 Cal. App. 3d 1316, 1324-25 (1990).

The Broker Exemption was then refined and interpreted by the California legislature in 1983 when it enacted Cal. Civ. Code § 1916.1. The new statute expanded the Broker Exemption by specifically including forbearances. As amended in 1985, Cal. Civ. Code § 1916.1 construed what the constitution and the statute meant when they referred to loans and forbearances "arranged by" a real estate broker. As recognized in *Winnett v. Roberts*, 179 Cal. App. 3d 909, 921 (1986), "[t]he legislative interpretation of article XV contained in Civil Code section 1916.1 is not unreasonable. Accordingly it is entitled to, and we indulge, a strong presumption in its favor." *See also Zager v. Lara (In re Lara)*, 731 F.2d 1455, 1459 (9th Cir. 1984) ("Because Section 1916.1 presents a reasonable interpretation of Proposition 2, we must accept the legislature's conclusion that a licensed real estate broker need not be acting in his licensed capacity for the usury exemption to apply.").

## 2. Milestone's arguments.

Milestone offers two somewhat inconsistent arguments why it

believes the Settlement Agreement was not subject to usury laws. It asserts that a loan modification extending the Settlement Agreement's maturity date is not a forbearance so long as the original loan was exempt. In this instance, the parties acknowledge that Milestone's original loan was arranged by a real estate broker and was exempt from the usury laws under Cal. Civ. Code § 1916.1. Alternately, Milestone urges that even if the Settlement Agreement qualifies as a forbearance, Cal. Civ. Code § 1916.1 should be applied broadly to include any forbearance of a loan originally exempt under that statute. Neither argument persuades us.

### a. The settlement agreement was a forbearance.

California's usury laws apply to loans and forbearances. "A loan of money is the delivery of a sum of money to another under a contract to return at some future time an equivalent amount." *Sw. Concrete Prods.*, 51 Cal. 3d at 705 (citing *Boerner v. Colwell Co.* 21 Cal. 3d 37, 44, n.7 (1978)). By way of comparison, "[a] forbearance of money is the giving of further time for the payment of a debt or an agreement not to enforce a claim at its due date." *Id.*; *see also* 11 Miller & Starr, Cal. Real Est. § 37:6 (4th ed. 2022) ("A forbearance is the extension of additional time for the repayment of an obligation or an agreement not to enforce a claim on its due date, or releasing and extending the borrower's obligation for repayment."). Thus, "[a] forbearance occurs when the creditor, in exchange for consideration, agrees to wait for a period of time to collect the debt." *Sheehy v. Franchise*

13

*Tax Bd.*, 84 Cal. App. 4th 280, 284 (2000).

Milestone contends that the Settlement Agreement was not a loan or forbearance because the agreement said so. But the substance of an agreement controls over its form. *Ghirardo*, 8 Cal. 4th at 799–800. It is well settled that the label used by the parties is not controlling. *See id.* at 802.

The Settlement Agreement provided for a two-year extension of the maturity date of the Note. It is undisputed that this was the principal purpose of the parties entering into the Settlement Agreement. It also provided the required consideration for a binding forbearance agreement in the form of a $6,008.71 "extension fee" to be paid by the Moons. As such, it falls squarely within the definition of forbearance applied in *Southwest Concrete Products* and *Boerner*. Whatever motive drove the parties to declare that the Settlement Agreement was neither a loan nor a forbearance, that label does not help Milestone. The bankruptcy court did not err in its finding that the Settlement Agreement constituted a forbearance for purposes of California's usury laws.

### b. Cal. Civ. Code § 1916.1 cannot be construed to exempt all forbearances of exempt loans.

Milestone alternately argues that even if the Settlement Agreement constitutes a forbearance, we should broadly read Cal. Civ. Code § 1916.1 as being applicable to any subsequent modifications between the parties whenever the original loan was exempt. Milestone relies heavily on *Ghirardo* and *DCM Partners.* It argues that their holdings should be

extended to the Settlement Agreement. These cases considered extensions of **credit sale transactions** and concluded that they are not loans or forbearances subject to the usury laws. According to both decisions, it made no difference whether the parties modified the applicable interest rate, or if it remained unchanged. *Ghirardo*, 8 Cal. 4th at 805-07; *DCM Partners*, 228 Cal. App. 3d at 735. The modified credit sale's terms were excepted from usury law's restrictions for the same reasons the original loans were excepted. *Ghirardo*, 8 Cal. 4th at 804; *DCM Partners*, 228 Cal. App. 3d at 739.

*Ghirardo*'s and *DCM Partners'* treatment of credit sale extensions is grounded in the time-price doctrine as articulated in the courts of 18th century England. *See Fox v. Federated Dep't Stores, Inc.*, 94 Cal. App. 3d 867, 876 (1979) (citing *Floyer v. Edwards*, 98 Eng. Rep. 995 (K.B. 1774)). "This doctrine applies when property is sold on credit as an advance over the cash price. In these circumstances, the seller finances the purchase of property by extending payments over time and charging a higher price for carrying the financing." *Sw. Concrete Prods.*, 51 Cal. 3d at 705. The United States Supreme Court followed this doctrine in *Hogg v. Ruffner*, 66 U.S. 115, 119 (1861), and virtually every state has adopted it. *See Fox*, 94 Cal. App. 3d at 876. California adopted the doctrine in *Verbeck v. Clymer*, 202 Cal. 557, 563-64 (1927), which explained, "[t]he first element of a usurious transaction is that there be a loan or forbearance of money, for, if there is neither, there can be no usury, unless a statute has given some definition of

usury inconsistent with that of the common law." *Id.* at 563. A bona fide credit sale is neither a loan nor forbearance subject to usury laws. *Sw. Concrete Prods.*, 51 Cal. 3d at 705. As the California Supreme Court reasoned in *Verbeck:*

> The owner of property, whether real or personal, has a right to name the price at which he is willing to sell. He may offer to sell at a designated price for cash, or at a much higher price on a credit, and a credit sale will not constitute usury, however great the difference between the cash price and the credit price, unless the whole transaction was in fact a mere pretense and a sham in order to camouflage the real facts.

*Id.* at 564 (quoting *Holland-O'Neal Milling Co. v. Rawlings*, 268 S.W. 683, 686 (Mo. Ct. App. 1925)).

In the decades following *Verbeck*, the general rule seemed to be that the time-price doctrine did not apply to subsequent forbearances arising from credit sales between a buyer and seller.[6] *See, e.g., Lakeview Meadows*

---

[6] The annotation, *Obligations covering deferred payments of purchase money, or extension thereof, as loan or forbearance within usury laws*, 91 A.L.R. 1105 (1934), lucidly explains why extensions of the maturity date of purchase money secured obligations traditionally have been treated as forbearances even when the original transaction was a credit sale transaction charging an otherwise usurious rate of interest:

> The extension of the time of payment of a purchase-money obligation beyond that fixed for its maturity under the original contract would seem to constitute a "forbearance of a debt," even if it be assumed that a purchase-money obligation bearing an excessive rate of interest during the time before its maturity would not be violative of the usury laws, on the theory of absence of an actual loan or a forbearance of a debt. It would seem that even under the view of those courts which hold such transactions immune from the ban of usury laws on the theory of absence of a loan or

16

*Ranch v. Bintliff*, 36 Cal. App. 3d 418, 422-24 (1973) *cited as unpersuasive in DCM Partners*, 228 Cal. App. 3d at 739 n.7; *Clarke v. Horany*, 212 Cal. App. 2d 307, 309–10 (1963), *also cited as unpersuasive in DCM Partners*. *Ghirardo* and *DCM Partners* rejected the traditional rule.

In *Ghirardo*, the Antoniolis sold real property to a third party who then resold it to Ghirardo. Both of these transactions were credit sales. Ghirardo and Antonioli later settled a payment dispute by which they restructured those debts. Ghirardo executed two "settlement notes," both of which charged usurious rates of interest. *Ghirardo*, 8 Cal. 4th at 796-97. Ghirardo later obtained a usury judgment against Antonioli. The California Supreme Court reversed, holding that the parties' settlement was neither a loan nor a forbearance. *Id.* at 797, 808. According to the *Ghirardo* court, the settlement was merely a modification of the prior credit sale(s), so the

forbearance of a debt (because forbearance presupposes a pre-existing indebtedness, not present in a sale), a purchase-money obligation, after the time of its maturity as fixed by the original contract, stands on a different footing. **The moment such obligation falls due, its association with the sale is severed. It is no more a part of the consideration for the sale. It is an obligation absolutely owing, independent of the sale out of which it arose; and any agreement for its extension can be regarded as one relating not to the consideration of the sale, but to an independent obligation, and therefore constituting a "forbearance of a debt," within the meaning of the usury laws. The fact that under the original transaction (the sale) there was no element of a loan does not detract from the merits of this conclusion, because usury may exist in the forbearance of a debt, even in the absence of an actual loan, and a loan is not a necessary prerequisite of a forbearance of a debt**.

*Id.* at 1110-11 (emphasis added) (listing cases).

17

interest rates in the settlement notes were not subject to usury restrictions. *Id.* at 808.

The *Ghirardo* court reasoned that in negotiating their settlement in the shadow of foreclosure, the parties faced the same risks and economic incentives as do a buyer and seller subject to a credit sale. *Id.* at 804. Thus, the California Supreme Court explained, the same logic and policies underlying the time-price doctrine equally supported treating the settlement as a mere modification of the ongoing credit sale relationship between the parties and not as a forbearance subject to the usury laws. In *Ghirardo*'s own words:

> We see no practical reason why the same rule should not obtain when the seller has already transferred title and is about to foreclose on the purchase money note. Just as he had an initial right to sell the property on any price terms he wished, he has the right to foreclose and to resell the property as he sees fit, at any interest rate, including reselling to the initial buyer. Precluding him from renegotiating with the buyer would elevate form over substance.

*Id.*

The California Supreme Court emphasized that, if the rule were that an otherwise exempt transaction could be brought within the ambit of the usury laws by the seller granting an extension to the buyer, sellers would have a disincentive to negotiate with buyers and instead would be motivated to foreclose, which would work to the detriment of both parties—but particularly to that of buyers who would then lose their

property to foreclosure. *Id.* at 805-06.

*Ghirardo* drew heavily from *DCM Partners*, which utilized a virtually identical analysis to reach a similar result. In *DCM Partners*, the owner of real property (Smith) sold it to DCM Partners in exchange for cash and a $108,000 promissory note bearing 10% interest secured by a deed of trust. The note provided for interest only payments, with the principal balance due upon the note's maturity. *DCM Partners*, 228 Cal. App. 3d at 732. Shortly before the due date for the balloon payment, the buyer determined that he would not be able to repay the note on or before its maturity date. Consequently, the buyer entered into negotiations with the seller by requesting an extension of the maturity date. The seller agreed, but required the interest rate be raised from 10% to 15% to reflect an increase in the market rate. The buyer paid the extended note, but then successfully sued the seller for usury. *Id.*

Initially, the court of appeal rejected seller's argument that the extension was not a forbearance because it was entered into before the note matured. The *DCM Partners* court held that the definition of forbearance was not as narrow as seller asserted and concluded that "forbearance within the meaning of the usury law is an agreement to extend the time for payment of the obligation due either before or after the obligation's due date." *Id.* at 735 (cleaned up). Nonetheless, *DCM Partners* ultimately held that the usury laws did not apply to "a modified purchase money secured note initially created in an exempt transaction, the bonafide sale and

19

purchase of real property, where the modification, done at the request of the trustor, consisted solely of increasing the rate of interest to reflect market conditions in consideration of extending the due date of the note." *Id.* at 732.

*DCM Partners* was even more candid and emphatic than *Ghirardo* that its decision was founded on the practical or economic effect of its decision and the perceived unfairness if it were to decide otherwise. It frankly admitted that "**absent legislative direction or persuasive precedent** a factor underlying our conclusion that this transaction was not usurious is the discomforting unfairness if we were to conclude otherwise." *Id.* at 735 (emphasis added).

Placing *Ghirardo* and *DCM Partners* in context, credit sales are not treated as loans nor forbearances under California law. It is for this reason that they are not subject to its usury laws. But the Broker Exemption has a drastically different origin from the time-price, credit-sale doctrine which traces its origins in the common law of 18th century England. *Fox*, 94 Cal. App. 3d at 876. In contrast, the Broker Exemption was formulated by voter initiative and refined by California's legislature. We must presume that California's voters and its legislature said what they meant and meant what they said when they amended California's constitution and enacted Cal. Civ. Code § 1916.1. *See Del Mar*, 222 Cal. App. 3d at 1328. As *Del Mar* explained: "It is a settled rule of statutory construction that unless otherwise clearly intended or indicated, statutes should be construed in

20

accordance with the common or ordinary meaning of the language used, particularly when the law as so construed is consistent with the general policy of the state." *Id.* (citations omitted).

Section 1916.1 statutorily creates an exemption to the usury laws otherwise applicable to loans and forbearances. Nowhere in the statute is there an exemption for a forbearance merely because the original loan transaction qualified for that exemption. As elucidated in *In re Arce Riverside, LLC*, 538 B.R. 563, 574 (Bankr. N.D. Cal. 2015):

> CC 1916.1 extends the [Broker Exemption], in its opening sentence, to "any loan or forbearance" made or arranged by a licensed real estate broker. The second sentence narrows the field where it indicates that "for purposes of this section" the exemption applies only in three circumstances. The first applies to a loan (not applicable here). The second applies to "selling, buying, leasing, exchanging or negotiating the sale, purchase, lease, or exchange of real property or a business for another" and the broker either (A) arranges a loan or (B) "arranges a forbearance" in connection with that sale, purchase, lease, etc. . . . . The third [circumstance] is found where the broker "arranges or negotiates for another a forbearance, extension, or refinancing of any [real property] loan . . . in connection with a past [real property sale/lease/exchange] transaction in which the broker had acted for compensation."

*Id.*

On appeal, Milestone does not argue that the Settlement Agreement specifically falls within any of the three enumerated circumstances qualifying for the Broker Exemption. Indeed, the statute expressly exempts from usury any broker arranged or negotiated "forbearance or extension"

to a real property secured loan when it is connected to a contemporaneous or past real property sale, lease, or exchange transaction in which the same broker acted for compensation. Cal. Civ. Code § 1916.1(2) and (3). Though a broker represented the Moons in procuring the Milestone loan bringing it within the statutory exemption, no broker was involved with the Settlement Agreement. Thus, because no broker was involved with the forbearance, the Settlement Agreement did not meet the statutory requirements for the Broker Exemption.[7]

Milestone argues that we should extend *Ghirardo* and *DCM Partners* because strict adherence to Cal. Civ. Code § 1916.1 can lead to absurd and inequitable results. It points to language in *Ghirardo* and *DCM Partners* concluding that such results **in the credit sale context** were "somewhat absurd and clearly inequitable." *Ghirardo*, 8 Cal. 4th at 806; *see also DCM Partners*, 228 Cal. App. 3d at 735. Milestone further argues that in departing from *Ghirardo* and *DCM Partners*, the bankruptcy court ignored sound reasoning why it makes no practical or economic sense to impose usury restrictions on non-exempt pre-foreclosure forbearances given that the creditor could simply foreclose and resell to a new buyer or even the prior owner and then charge any interest rate it desired under the shelter of the

---

[7] As the bankruptcy court emphasized, the Settlement Agreement also did not qualify for the Broker Exemption because it lacked the requisite connection to a past or contemporaneous sale, lease, or exchange of real property.

time-price doctrine.

*Ghirardo* and *DCM Partners* are the exception to the general rule that forbearances are assessed independently for usury purposes. *See, e.g.*, *Strike v. Trans-West Disc. Corp.*, 92 Cal. App. 3d 735, 744–45 (1979); *see also* 11 Miller and Starr, Cal. Real Est. § 37:6 (4th ed. 2022) ("Although the original loan is not usurious, any extension or forbearance of the contractual due date of the loan may be a forbearance subject to the usury limitations, unless it is exempt by some other provision of the Usury Law."). That exception is limited to credit sales because they fall outside of California's usury laws. Milestone, however, entered into a loan, and then a forbearance, with the Moons. Both the loan and forbearance were subject to California's usury laws. Milestone's loan fell within the statutory Broker Exemption due to the involvement of Moon's broker but the subsequent forbearance did not.

The results Milestone assails are not so incongruous that we are prepared to rewrite the Broker Exemption on California's behalf. If California wanted to exempt under Cal. Civ. Code § 1916.1 all forbearances of any loan originally subject to the Broker Exemption, it would have been a simple matter for the statute to say so. Instead, the California legislature took pains to set forth a more complex and more restrictive statutory scheme as to when the Broker Exemption should be applied to forbearances. Nor do we perceive our reading of this scheme as being at

odds with the purpose and intent of the Broker Exemption.

In short, we decline to second guess the plain meaning of Cal. Civ. Code § 1916.1 or to impose what would amount to a judicial amendment of the statute.

## B. Cross-appeal from court's award of post-maturity interest.

After deciding that the Settlement Agreement's interest provision was void as usurious, the bankruptcy court nonetheless determined that Milestone was entitled to post-maturity interest. The bankruptcy court relied on *Epstein v. Frank*, 125 Cal. App. 3d 111 (1981), which held that even when a note includes an unenforceable usurious interest provision the lender is entitled to recover the principal amount of the debt upon maturity and interest at California's legal rate if the principal is not repaid when it is due. *Id.* at 122-23; s*ee also Soleimany*, 78 Cal. App. 5th at 923-24 (explaining the scope and application of legal interest rate provisions in Cal. Civ. Code § 3289 and CAL CONST. art. XV, § 1). The *Epstein* court noted that "denial of interest up until the maturity of the note is a sufficient deterrent against the exacting of usurious interest." *Epstein*, 125 Cal. App. 3d at 123. If the note remains unpaid on maturity, the lender is entitled to prejudgment interest under California law. *Id.*; *Soleimany*, 78 Cal. App. 5th at 922-23.

The Moons do not dispute that under *Epstein* a lender is entitled to post-maturity interest on the unpaid principal at the legal rate even if the contract rate of interest was usurious. Instead, they rely upon a statement in *Epstein* that "[i]f the obligor improperly withholds payment of this

24

obligation it is neither unjust nor contrary to policy that he be chargeable with interest at the legal rate from the date he was obligated to pay the note until the date he discharges that obligation, or to the date a judgment is rendered against him." *Epstein*, 125 Cal. App. 3d at 123. They maintain that they properly withheld payment from Milestone because of Milestone's misconduct. They argue that Milestone wrongfully refused to accept payment of a non-usurious amount and improperly calculated the loan balance with interest, fees, and charges as provided under the Settlement Agreement. According to the Moons, the bankruptcy court erred when it rejected their equitable and legal theories, which they believe excused them from paying any interest on the principal balance.

We agree with the bankruptcy court that the Moons failed to establish any legally cognizable basis to deny Milestone post-maturity interest at the legal rate. Under *Epstein* and *Soleimany*, the right to prejudgment interest at the legal rate commenced upon the maturity of the loan.

The Moons asserted claims against Milestone in an attempt to deny it any post-maturity interest. Those claims arguably could have supported an award of damages that the Moons could have used to offset their liability, but they have failed to offer any legitimate explanation how such claims could negate Milestone's right to prejudgment interest on maturity of the loan under *Epstein* and *Soleimany*. We hold that the bankruptcy court correctly denied the Moons' equitable defenses to the accrual of post-

25

maturity interest as a matter of law. But even if we were to consider the Moon's arguments, they are unavailing.

## 1. Equitable estoppel does not justify a denial of post-maturity interest.

The Moons argue that Milestone's conduct estopped it from seeking any post-maturity interest on the principal balance owed. They focus on the payoff demands Milestone provided containing the usurious interest rate and the improper acceleration fee. The Moons also contend that the payoff demands were otherwise inaccurate and that Milestone failed to cooperate in their efforts to pay off the debt. But the bankruptcy court never made any determination regarding the accuracy of Milestone's payoff demands or concerning Milestone's cooperation. And the Moons acquiesced to dismissal of their surviving claims at the time the court entered summary judgment, thereby forfeiting any right to have these surviving issues determined.

More importantly, any holding that Milestone's usurious interest rate or its improper acceleration fee precludes recovery of post-maturity interest would be wholly at odds with *Epstein*'s holding. Simply put, *Esptein* upheld the lenders' right to post-maturity interest **despite** usurious interest charges.

On a more practical level, the Moons never explained how Milestone's conduct satisfied the elements required to establish equitable estoppel. Equitable estoppel ordinarily requires: "(1) the party to be

26

estopped must be apprised of the facts; (2) he must intend that his conduct shall be acted upon, or must so act that the party asserting estoppel had the right to believe that it was so intended; (3) the party asserting the estoppel must be ignorant of the true state of facts; and (4) he must rely on the conduct to his prejudice." *Butler Am., LLC v. Aviation Assurance Co., LLC*, 55 Cal. App. 5th 136, 147 (2020). If the party asserting the estoppel fails to show that he or she relied on the opposing party's representation or conduct to his or her detriment, equitable estoppel does not apply. *Id.* at 148. The Moons argue that calculating the payoff with the usurious interest and acceleration fee constitute inequitable conduct. But the Moons never claimed that they believed Milestone's payoff demands were accurate or relied on them in the course of their dealings with Milestone. To the contrary, the record reflects that they strenuously disputed them. In short, equitable estoppel does not apply here, and it would not help the Moons even if it did.

**2. The doctrine of unjust enrichment does not justify denial of post-maturity interest.**

Citing *Beck v. West Coast Life Insurance Co.*, 38 Cal. 2d 643, 645 (1952), the Moons claim that the bankruptcy court's order granting Milestone post-maturity interest violates Cal. Civ. Code § 3517 and the statutory prohibition against anyone profiting from their own wrong. They contend that any award of post-maturity interest violates this principle because they would have paid off the Note but for Milestone's overstated payoff

demand. Again, this argument is at odds with *Epstein* which specifically provided for post-maturity interest where the lender charged a usurious interest rate prior to the loan maturing. Under *Epstein,* Milestone is not profiting from its usurious interest rate; it is being compensated for the Moons' failure to pay the outstanding balance of its loan when it came due.

In any event, the Moons' argument invoking Cal. Civ. Code § 3517 lacks merit. *Beck* makes clear that Cal. Civ. Code § 3517 is a codification of unjust enrichment doctrine: "The general principle that precludes a wrongdoer from unjustly enriching himself has been codified in section[s] 2224 and 3517 of the Civil Code and applied in a variety of situations." 38 Cal. 2d at 645 (footnotes omitted). Unjust enrichment is an equitable remedy. *Levine v. Blue Shield of Cal.*, 189 Cal. App. 4th 1117, 1138 (2010); *Ramona Manor Convalescent Hosp. v. Care Enters.*, 177 Cal. App. 3d 1120, 1140 (Ct. App.), *as modified on denial of reh'g* (Mar. 5, 1986). Courts do not apply equitable remedies when there is an adequate remedy at law—like readily ascertainable damages. *DVD Copy Control Assn., Inc. v. Kaleidescape, Inc.*, 176 Cal. App. 4th 697, 725–26 (2009); *Ramona Manor Convalescent Hosp.*, 177 Cal. App. 3d at 1140.

The record reflects that the Moons failed to plead or prove an entitlement to an unjust enrichment remedy, but they did assert breach of contract and other claims against Milestone. Perhaps the Moons could have proven that damages arose from Milestone's overstatement of its payoff demand, but they chose not to do so. Instead, they voluntarily dismissed

28

their remaining claims for relief and acquiesced to entry of final judgment adjusting the balance due to exclude the usurious interest and unenforceable acceleration fee.

### 3. The Moons failed to establish that Milestone's so-called breach of contract excused their duty to pay interest.

The Moons also argue that Milestone breached its contractual obligations by overstating its payoff demand. They point to the bankruptcy court's judgment which granted relief on their claim for breach of contract. Milestone's breach of contract, they argue, excuses them from paying any interest on the Note. There are several problems with their breach of contract argument.

First, promissory notes are generally considered to be a unilateral contract. *See E.B.C. Tr. Corp. v. JB Oxford Holdings, Inc.*, Case No. CV-008812-RMTMCX, 2004 WL 5641999, at *1 (C.D. Cal. Oct. 26, 2004) (citing *Haulman v. Crumal*, 13 Cal. App. 2d 612, 619 (1936)); 1 Witkin, Summary 11th Contracts § 107 (2022) (including a promissory note as an illustration of a unilateral contract). Upon lending the money to the Moons, Milestone had no further contractual obligations. Though the bankruptcy court entered judgment on the Moons' second cause of action in the Amended Complaint for breach of contract including the failure to provide an accurate payoff demand, it is unclear how any such contractual obligation

arose.[8]

Second, the bankruptcy court's grant of summary judgment on the Moons' breach of contract claim was based solely on the court's determination that Milestone charged usurious interest in violation of California law and that the acceleration fee also was unenforceable. Even though these charges were legally unenforceable under California law, Milestone's payoff demands including these charges still were calculated in accordance with the terms of the parties' Settlement Agreement. It defies logic to say that Milestone's adherence to the agreed upon terms of the parties' contract—before those terms were declared legally unenforceable—somehow constituted a breach of contract claim that excused the Moons' performance of their obligation to repay the principal balance with post-maturity interest. To the extent that the Moons stated affirmative claims on other theories based on Milestone's conduct, they voluntarily forfeited those claims by electing not to pursue them in the bankruptcy court.

---

[8] Under California law, there is a statutory duty to provide a payoff demand under Cal. Civ. Code § 2943(c), which in relevant part provides: "[a] beneficiary, or his or her authorized agent, shall, on the written demand of an entitled person, or his or her authorized agent, prepare and deliver a payoff demand statement to the person demanding it within 21 days of the receipt of the demand." *See generally Black v. Sullivan*, 48 Cal. App. 3d 557, 566-67 (1975) (treating willful failure to provide a payoff demand statement as required by § 2943 as a "civil wrong" and tortious conduct).

### 4. The Moons forfeited any other arguments they might have raised.

The issue of whether the Moons might have made an appropriate tender was raised for the first time in Milestone's brief responding to the Moons' cross-appeal. A full and **unconditional** tender of the amount owed on a promissory note will discharge the payor's liability for all future interest, costs, and attorney's fees. *Still v. Plaza Marina Com. Corp.*, 21 Cal. App. 3d 378, 385 (1971); *see also U.S. Bank Nat'l Ass'n v. Friedrichs*, 924 F. Supp. 2d 1179, 1185–86 (S.D. Cal. 2013) ("In order for [an offer of performance] to be valid, it must be made in good faith, unconditional, offer full performance, and [the offeror] must be able to perform."). The record does not reflect that the Moons ever tendered any amount to Milestone for the payoff of their loan.

The bankruptcy court had no opportunity to pass upon this inherently factual issue. Nor was this issue raised in the Moons' opening cross-appeal brief. Consequently, the Moons forfeited this issue as well. *See Mano-Y&M, Ltd. v. Field (In re Mortg. Store, Inc.)*, 773 F.3d 990, 998 (9th Cir. 2014) ("In general, a federal appellate court does not consider an issue not passed upon below. A litigant may waive an issue by failing to raise it in a bankruptcy court." (cleaned up)); *Samson v. W. Cap. Partners, LLC (In re Blixseth)*, 684 F.3d 865, 872 n.12 (9th Cir. 2012) (appellate court may decline to address argument not raised before bankruptcy court); *Christian Legal Soc'y v. Wu*, 626 F.3d 483, 487–88 (9th Cir. 2010) (issues not specifically and

distinctly argued in the appellant's opening brief can be deemed forfeited).[9]

## CONCLUSION

For the reasons set forth above, we AFFIRM the bankruptcy court's judgment.

---

[9] The Moons made passing reference to Milestone's alleged failure to mitigate near the end of their closing cross-appeal brief. It was not mentioned at all in their opening appeal brief. Thus, we decline to consider this issue as well. *Christian Legal Soc'y*, 626 F.3d at 487–88.